Charles D. WAMHOFF, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 94–561.

United States Court of Veterans Appeals.

Decided Jan. 30; 1996.

Reconsideration Denied Feb. 27, 1996.

James A. O'Neal, Indianapolis, IN, was on the brief for appellant.

Mary Lou Keener, General Counsel, Atlanta, GA; Ron Garvin, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Joan E. Moriarty, Washington, DC, were on the brief for appellee.

Before MANKIN, HOLDAWAY, and IVERS, Judges.

MANKIN, Judge:

The appellant, Charles D. Wamhoff, appeals the March 23, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied the appellant's claim for entitlement to an earlier effective date for a grant of service connection and a compensable rating for chronic subluxation and dislocation of the left shoulder and internal derangement of the right knee, based on the appellant's assertion of clear and unmistakable error (CUE) in a prior rating decision of March 19, 1982. Both parties filed briefs and supplemental briefs. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court affirms the March 23, 1994, decision of the BVA.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Army from February 1977 to October 1981. The appellant's entrance medical exam was negative for any physical disabilities. In June 1980, the appellant injured his right knee in a motorcycle accident. A subsequent orthopedic examination revealed that the appellant's right knee was stable, and the examiner noted moderate effusion and tenderness around the knee and joint space. The examiner prescribed a knee immobilizer and Tylenol with codeine for this injury. In July 1980, approximately 1½ months after the knee injury, the appellant was examined again because of his complaints of pain associated with his knee injury. In this examination, the examiner stated that there was a "swollen area around the knee cap [and] slight pain on movement". The examiner further stated that the "knee [was] healing but should not [be] overwork[ed]."

In October 1980, the appellant was involved in another, more serious, motorcycle accident. A provisional diagnosis conducted at the emergency room revealed an acromio-clavicular (AC) separation of the left shoulder, and x-rays conducted shortly thereafter confirmed an AC separation of the left clavicle and left shoulder. The appellant was next treated for this shoulder injury in November 1980. At this time, the examiner found that the impression was an unresolved AC separation. The appellant was informed that he could return to full duty after two weeks' rest.

The appellant received no further treatment for his knee or shoulder injuries while on active duty. In September 1981, during the appellant's separation medical exam, J.B. Van Delden, M.D., reported that the appel-

lant had a prominent knob of the left AC joint with a second-degree separation. During this examination, no x-rays were taken and no clinical findings regarding limitation of motion or pain on motion were made by Dr. Van Delden. Dr. Van Delden did not report any further physical defects or disabilities. Specifically, he did not make any notations with respect to the appellant's knee injury, except that one had occurred while on active duty.

In December 1981, the appellant filed an application for compensation for disabilities resulting from his two motorcycle accidents. The VA regional office (VARO) scheduled the appellant for a medical examination to establish a rating decision for service connection and compensation purposes. The appellant, however, failed to report for this examination. In April 1982, the VARO mailed the appellant a letter denying his claim for benefits and informed him that:

> [c]laimants must undergo an examination when requested, and you failed to report for a scheduled examination. No further action will be taken unless we receive notification of willingness to report for examination. If you do so, an examination will be re-scheduled and the claim will be reconsidered when the examination is completed.

Also, the letter explained the appellant's right to appeal this denial of benefits.

The VARO notified the appellant of the medical examination and the denial of benefits by letters mailed to his parents' address in Minnesota. This was the address that the appellant had listed on his application for benefits. The appellant, however, contends that he did not receive either notification because neither he nor his parents were residing at the address at the time the VARO mailed the notifications. According to the appellant, his parents spent "the colder months" in Arizona, and his work kept him out of the state of Minnesota until 1987.

The appellant took no further action with respect to his claim for benefits until June 1991, when he reopened his claim by filing another Application for Compensation or Pension. Again, the VARO requested that the appellant undergo a VA medical examina-

tion. In October 1991, the appellant submitted to the examination. The examination revealed a subluxation/dislocation of the left shoulder, severe left humeral epicondylitis, and internal derangement of the right knee. The VARO, in a rating decision dated October 31, 1991, granted the appellant service connection for injuries relating to his left shoulder and right knee disabilities, effective June 26, 1991.

In December 1991, the appellant filed a Notice of Disagreement stating that the effective date for his disability award should be September 1981, when he initially applied for benefits, rather than June 1991, the date of the reopened claim. The appellant alleged that the VARO "committed clear and unmistakable error in March 1982 [by] denying his initial claim because there was sufficient evidence, [without a current medical exam], to grant service connection on the basis of the service medical records [ (SMRs) ] and other information on file." *Charles D. Wamhoff,* BVA 94–04080, at 2 (Mar. 23, 1994). The BVA denied the appellant's claim, reasoning that "[a]lthough the [SMRs] indicated that the veteran experienced shoulder and knee injuries, disability could not be verified without a VA examination." *Wamhoff,* BVA 94–04080, at 5. The appellant then filed a timely appeal to this Court.

## II. ANALYSIS

■ A CUE claim is a collateral attack on a final VARO decision. *Smith (William) v. Brown,* 35 F.3d 1516, 1527 (Fed.Cir.1994). In *Russell v. Principi,* 3 Vet.App. 310, 313–14 (1992) (en banc), this Court defined a now well-established three-part test for a CUE analysis. A determination that CUE exists in a prior decision means that:

> (1) "[e]ither the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied," (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made," and (3) a determination

that there was CUE *must be based on the record and law that existed at the time of the prior adjudication in question.*

*Damrel v. Brown,* 6 Vet.App. 242, 245 (1994) (emphasis added) (quoting *Russell,* 3 Vet. App. at 313–14). In addition, a failure to address a specific regulatory provision involves harmless error unless the outcome would have been manifestly different. *Fugo v. Brown,* 6 Vet.App. 40, 44 (1993).

■ The question of whether the BVA erred in determining that a prior VARO decision did not contain CUE is reviewed by this Court under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review in 38 U.S.C. § 7261(a)(3)(A). *See Damrel,* 6 Vet.App. at 246; *Russell,* 3 Vet.App. at 315. Under this standard this Court's review is limited. *See, e.g., Ternus v. Brown,* 6 Vet. App. 370, 375 (1994). In *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Company,* the United States Supreme Court stated:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 103 S.Ct. at 2866–67, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). In *Marlow v. Brown,* this Court stated that "[t]he Board's decision is arbitrary if the Board 'entirely failed to consider an important aspect of the problem, . . . or [if the decision] is so implausible that it could not be ascribed to a difference in view. . . .' " *Marlow v. Brown,* 5 Vet.App. 146, 151 (1993) (citing *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866–67).

■ In the instant case, the appellant argues that the effective date for his service-connected disabilities should be October 1981, the day after his discharge from active

duty, because although he did not report for the ordered medical exam, the VARO committed CUE by failing to rate his claim based upon the available evidence of record. The BVA adjudicated the appellant's claim pursuant to title 38 of the Code of Federal Regulations, section 3.655(b) (1992), which provides that "[w]hen a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of the record." In addition, both the Secretary and the appellant, initially, argued that section 3.655 governed the outcome of this CUE claim.

However, as both the Secretary and the appellant stated in their supplemental briefs, the BVA had erroneously applied the wrong version of section 3.655. *See Damrel,* 6 Vet. App. at 245 (a determination that there was CUE "must be based on the record and law that existed at the time of the prior adjudication in question"). The 1982 version of section 3.655 applied only to continuing rating decisions and resumptions, not to original claims, as does the current version. *See* 38 C.F.R. § 3.655 (1982); *compare* 38 C.F.R. § 3.655 (1992). Moreover, the 1982 version of section 3.655 did not require the VA to rate the claim based on the evidence of record when the claimant fails to report for a medical examination as the current version of section 3.655 does. *Ibid.* Rather, the 1982 version of section 3.655 provided that the VA must generally "discontinue" benefits when the claimant fails to report for a medical examination. *See* 38 C.F.R. § 3.655 (1982). Accordingly, it was an error for the BVA to apply the 1992 version of section 3.655.

■ However, as will be shown, this error is nonprejudicial because a review of the applicable regulations in existence during 1982 and the analysis conducted by the BVA demonstrates that the BVA's conclusion would have been the same if it applied the correct version of the applicable regulations. *See, e.g., Tallman v. Brown,* 7 Vet.App. 453, 466 (1995). In other words, there is nothing to show that "the outcome would have been manifestly different" if the BVA applied the correct regulations. *Fugo,* 6 Vet.App. at 44.

The pertinent 1982 provisions of title 38, Code of Federal Regulations, are sections 3.158, 3.329, 3.326, and 3.327. First, the relevant part of section 3.158, a part that has remained unchanged in the current version, provided that

> [w]here evidence requested in connection with an original claim ... is not furnished within 1 year after the request, the claim will be considered abandoned. After the expiration of 1 year, further action will not be taken unless a new claim is received. Should the right to benefits be finally established, pension, compensation, or dependency and indemnity compensation based on such evidence shall commence not earlier than the date of filing the new claim.

38 C.F.R. § 3.158(a). Next, section 3.329, a regulation that is no longer in effect, required that "[e]very person applying for or in receipt of compensation or pension shall submit to examinations ... when required by the Veterans Administration under Veterans Administration regulations or other proper authority." 38 U.S.C. § 3.329. Section 3.326(a) authorized a VA examination when there was a "reasonable probability of a valid claim," and finally, section 3.327(b) required "that at least one [VA] examination be made in every case in which compensation benefits are awarded." 38 U.S.C. §§ 3.326(a) and 3.327(b). The Court notes that pursuant to section 3.327(b), the appellant's SMRs could qualify as a VA examination; however, the Court also recognizes that pursuant to 3.326, the VARO was well within its authority to require that the appellant undergo a current VA examination, when as in the instant case, the SMRs are insufficient to establish service connection. Here, the SMRs are insufficient because during the appellant's separation exam there were no clinical findings with respect to limitation of motion or painful motion and no x-rays were taken to confirm the status of the disability.

■ In its review, the BVA found that based on the evidence of record at the time the initial claim was disallowed, there was no way to confirm that the appellant had any residuals from the injuries documented in his SMRs, absent a contemporary medical exam-

ination. *Wamhoff,* BVA 94–04080, at 5. This Court's case law is well settled in this area. In order for a claimant to be awarded service connection there must be evidence of a present disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995); *see also Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992) (service connection is limited to cases where an inservice incident has resulted in a disability, and "[i]n the absence of proof of a present disability there can be no valid claim"); *Dusek v. Derwinski,* 2 Vet.App. 519, 522 (1992) ("it is incumbent upon the veteran to submit to VA examinations if he is applying for, or in receipt of, compensation"); *Rabideau v. Derwinski,* 2 Vet.App. 141, 144 (1992) (a service connection claim must be accompanied by evidence which establishes that the claimant currently has the claimed disability). In fact, as the Court in *Dusek* stated, the VA has a "statutory duty to assist the veteran in developing the facts pertinent to his claim by ordering such an examination." *Dusek,* 2 Vet.App. at 521 (citing 38 U.S.C. § 5107(a)). Here, the appellant's SMRs and his separation exam, the only evidence of record, did not establish that the appellant "currently had the claimed disability." *Rabideau,* 2 Vet.App. at 144. Accordingly, because the record was devoid of evidence demonstrating a current disability, it was proper for the VARO to require that the appellant undergo a current medical examination to establish service connection.

The appellant did not report for the required medical examination or furnish the requested evidence within the specified one year of the request; therefore, the VARO was required, by VA regulations, to consider the claim abandoned. *See* 38 C.F.R. § 3.158. The Court notes that the facts of this case are not similar to *Hyson v. Brown,* 5 Vet. App. 262, 265 (1993), where the Court held that the VA cannot consider a claim abandoned when the veteran fails to report for a VA examination if there is evidence of an alternate known address. The Court in *Hyson* stated that the VA is precluded from determining a claim abandoned only when "a file discloses other possible and plausible addresses [and] an attempt should be made to locate him at the alternate *known* address before finding abandonment of a previously

adjudicated benefit." *Id.* at 265. Here, the file did not disclose any other possible addresses for the appellant other than his parents' address. As the Court stated, "[T]here is no burden on the part of the VA to turn up heaven and earth to find the [veteran]." *Ibid.*

■ Finally, the Court notes that the appellant's virtual disappearance from the process essentially caused his claim to be disallowed. His failure to report for an examination, to provide the VA with a forwarding address, or even to follow up on his claim for some ten years were the main factors in his claim's being disallowed. The duty to assist in the development and adjudication of a claim is not a one-way street. *See Zarycki v. Brown,* 6 Vet.App. 91 (1993). Moreover, the appellant has not provided any evidence that he has seen a doctor in the ten years he was absent from the process. It would be pure speculation, at best, to assume that the appellant should have received benefits throughout that ten-year period.

■ Because the appellant's current disability was not verified by VA medical personnel until 1991, when he reopened his claim and reported to an October 1991 VA examination, the BVA was correct in finding that June 1991 was the proper effective date for the grant of service connection for the appellant's injuries. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.158. Accordingly, the Court holds that the BVA's determination that CUE was not present in the prior adjudication was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A).

### III.  CONCLUSION

Accordingly, for the reasons stated above, the March 23, 1994, decision of the BVA is AFFIRMED.