Citation Nr: 1222004 
Decision Date: 06/22/12 Archive Date: 07/02/12

DOCKET NO. 08-23 148A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to an increased initial rating in excess of 10 percent for the service-connected Hashimoto's hypothyroidism.

2. Entitlement to an initial compensable rating for the service-connected sinusitis.


ATTORNEY FOR THE BOARD

S. Higgs, Counsel


INTRODUCTION

The Veteran served on active duty from April 1983 to May 1986 and from February 1989 to December 2005.

These matters are before the Board of Veterans' Appeals (Board) on appeal from rating decisions dated in February 2007 and May 2007 by the RO.

A review of the Virtual VA paperless claims processing system does not reveal any additional documents pertinent to the present appeal.

The Board remanded the case to the RO for additional development of the record in December 2010. 

In May 2012 the Veteran submitted a written withdrawal of his request for a Board hearing. See 38 C.F.R. § 20.704.
 
The claim for an increased initial rating in excess of 10 percent for the service-connected Hashimoto's hypothyroidism is being remanded to the RO via the Appeals Management Center (AMC), in Washington, DC. 



FINDINGS OF FACT

The service-connected sinusitis is shown to be productive of a disability picture that more nearly approximates that of incapacitating episodes and treatment requiring antibiotics approximately four times per year; neither surgery nor chronic osteomyelitis is demonstrated.




CONCLUSION OF LAW

The criteria for an initial rating of 30 percent, but no more, for the service-connected sinusitis are met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321(b), 4.7, 4.97, Diagnostic Code 6513 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2011).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1).

An October 2006 VCAA letter explained the evidence necessary to substantiate the Veteran's claim for service connection for sinusitis. This letter also informed the Veteran of his and VA's respective duties for obtaining evidence. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

In addition, the VCAA notice letter from VA was provided prior to initial adjudication of the Veteran's service connection claim and explained how a disability rating is determined for a service-connected disorder and the basis for determining an effective date upon the grant of any benefit sought, in compliance with Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The RO granted service connection for sinusitis in May 2007 and assigned an initial noncompensable rating. This appeal arises as a result of receipt of the Veteran's Notice of Disagreement with this initial rating. 

With the grant of service connection the Veteran's claim was not only substantiated, it was proven, so that the purpose of VCAA notice, originally provided to the Veteran in October 2006, had been fulfilled. Thus no further VCAA notice was required with respect to the claim. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice arises upon receipt of a notice of disagreement). 

With regard to the duty to assist, the claims file contains service treatment records, reports of post-service treatment, and reports of VA examinations. The Board has also reviewed the medical records for references to additional treatment reports not of record for the time period at issue, but has found nothing to suggest that there is any outstanding available evidence with respect to the Veteran's claims, with one exception, as discussed hereinbelow. See 38 U.S.C.A. § 5103A(a)-(d).

The Veteran indicated in June 2008 that he would provide or authorize the release of these private treatment records from Geisinger Family Practice, and in January 2011 the RO, at the request of the Board, asked that he provide or authorize the release of any relevant private treatment records. However, he has not provided the authorizations for release of these records. 

Thus, VA has been unable to obtain these records. The duty to assist in the development and the adjudication of a claim is not a one-way street. Wamhoff v. Brown, 8 Vet. App. 517, 522 (1996); Zarycki v. Brown, 6 Vet. App. 91, 100 (1993); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). 

Without the Veteran providing these records or an authorization for their release, VA cannot obtain them. However, as will be discussed, the Board has found credible and consistent with other VA records of treatment the Veteran's characterization of what these private records of treatment records would show.

With respect to VA examinations, the Board notes that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

The VA examinations and VA treatment records are sufficient to establish that the Veteran's disability more nearly resembles the criteria warranting a 30 percent rating, but not higher due to the fact that he has not required radical surgery or multiple surgeries, or experienced chronic osteomyelitis, as a result of his sinusitis during the pendency of the appeal. 

As a result, the medical evidence, when viewed in context of November 2006 and June 2011 VA examination reports, is sufficient for adjudication of the matter on appeal.

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to his claim. 


Merits of the Claim

Disability evaluations are based upon the average impairment of earning capacity as determined by a schedule for rating disabilities. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4. Separate rating codes identify the various disabilities. 38 C.F.R. Part 4. 

The determination of whether an increased evaluation is warranted is based on review of the entire evidence of record and the application of all pertinent regulations. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

Once the evidence is assembled, the Secretary is responsible for determining whether the preponderance of the evidence is against the claim. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). 

If so, the claim is denied; if the evidence is in support of the claim or is in equal balance, the claim is allowed. Id. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In evaluating the severity of a particular disability it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). A claim such as this one, placed in appellate status by disagreement with the initial rating award and not yet ultimately resolved, is an original claim as opposed to a new claim for increase. Fenderson v. West, 12 Vet. App. 119 (1999). In such cases, separate ratings may be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. Id. 

The standard of proof to be applied in decisions on claims for veterans' benefits is set forth at 38 U.S.C.A. § 5107 (West 2002). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102. 

When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996). 

As noted, the Veteran is shown to have last served on active duty in December 2005.

At a VA general medical examination in November 2006, the examiner indicated that the Veteran had related that he had missed approximately five days of work in the past year due to sinusitis. 

A December 2006 VA CT-scan of the Veteran's sinuses was reported to be consistent with acute and chronic changes of left maxillary sinusitis.

 A VA treatment record dated in March 2007 showed that the Veteran had headaches that were a combination of migraine headaches, tension headaches, and sinus-related headaches.

In June 2008, the Veteran reported receiving treatment approximately three times per year for the past several years at Geisinger Family Practice due to having non-incapacitating episodes of sinusitis that included headaches, pain and purulent discharge. He reported dates that he had received private treatment for sinusitis in January 2006, March 2006, July 2006, September 2006, November 2007, February 2008, and May 2008. 

The Veteran added in June 2008 that he would provide or authorize the release of these private treatment records, and the RO requested that he provide or authorize the release of any relevant private treatment records in January 2011. However, he has not provided the authorizations for release of these records. 

To the extent that the Board finds the Veteran's descriptions of these occasions of private treatment to be credible and corroborated by the records of VA treatment since November 2008, the service-connected disability picture is shown to be manifested by frequent treatment and the use of antibiotics to treat the manifestations of the sinusitis.

The relevant VA treatment records obtained and associated with the claims file begin in approximately November 2008.

The Veteran was treated at VA for sinusitis, with yellow green drainage, in November 2008. He was prescribed antibiotics for his upper respiratory infection later that month. He also was prescribed antibiotics in December 2008, January 2009, February 2009, May 2009 and May 2010. Significantly, f or significant periods of time beginning in May 2009, he is shown to have worked in a civilian capacity overseas. 

At a VA examination in June 2011, the examiner reported that the Veteran experienced approximately four incapacitating episodes of sinsutis per year, each requiring four to six weeks of antibiotic treatment. The examiner additionally found that the Veteran experienced approximately four non-incapacitating episodes of sinusitis per year, resulting in headache, purulent drainage, and sinus pain, each lasting seven to fourteen days. 

The examiner opined that the Veteran's sinusitis had worsened. As a rationale, he stated that the Veteran needed oral antibiotics for sinusitis at least three to four times per year, whereas at earlier times he had only required antibiotics once per year.

The Veteran's sinusitis is rated under Diagnostic Code 6513 for chronic maxillary sinusitis. Ratings under Diagnostic Code 6513 are established under the General Rating Formula for Sinusitis. 

Under the applicable rating criteria, sinusitis following radical surgery with chronic osteomyelitis, or near constant sinusitis characterized by headaches, pain, and tenderness of the affected sinus, and purulent discharge or crusting after repeated surgeries warrants a 50 percent disability rating. 

Sinusitis with three or more incapacitating episodes per year requiring prolonged (lasting four to six weeks) antibiotic treatment, or more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting warrants a 30 percent disability rating. 

Sinusitis with one or two incapacitating episodes per year requiring prolonged (lasting four to six weeks) antibiotic treatment, or three to six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting warrants a 10 percent disability rating. Sinusitis detected by x-ray only warrants a no percent disability rating. 38 C.F.R. § 4.97, Diagnostic Code 6513.

A note to Diagnostic Code 6513 states that an incapacitating episode of sinusitis is one that requires bed rest and treatment by a physician. VA treatment records clearly show that the Veteran requires frequent treatment, including prescription of antibiotics, for his sinusitis. 

As to how often bed rest is required is not evident from the claims file; on this point, the Board notes that the June 2011 VA examiner described the Veteran as experiencing incapacitating episodes three to four times per year.

Thus, for the period of the appeal, the evidence is found to show frequent treatment of sinusitis with antibiotics, and some combination of incapacitating and non-incapacitating episodes that approximates the criteria of three or more incapacitating episodes per year or more than six non-incapacitation episodes per year. See 38 C.F.R. § 4.97, Diagnostic Code 6513.

The next higher rating of 50 percent is not warranted because the evidence shows, uniformly, that the Veteran has not at any time during the pendency of his claim required radical surgery or experienced chronic osteomyelitis, or repeated surgeries, for his sinusitis. See 38 C.F.R. § 4.97, Diagnostic Code 6513. 

In view of the Court's holding in Fenderson, the Board has considered whether the veteran was entitled to a "staged" rating for his service-connected disability, as the Court has indicated can be assigned in this type of case. 

However, upon reviewing the longitudinal record in this case, the Board finds that, as discussed, at no time since the effective date for service connection of January 1, 2006, has the Veteran's chronic sinusitis met or approximated the criteria for the next higher rating of 50 percent. See 38 C.F.R. § 4.97, Diagnostic Code 6513.

The Board has considered whether this case should be referred to the Director, Compensation and Pension Service, for extraschedular consideration for rating of the service-connected sinusitis. 

The governing norm in such exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b). 

If the rating criteria reasonably describe the Veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is, therefore, adequate and referral for an extraschedular rating is not required. Thun v. Peake, 22 Vet. App. 111, 115 (2008). 

In this case, the Veteran's symptoms, such as incapacitating episodes per year requiring prolonged (lasting four to six weeks) antibiotic treatment, non-incapacitating episodes, and headaches, pain, and purulent discharge are adequately addressed in the rating criteria. 

Accordingly, referral of this matter for extraschedular consideration is not warranted. 38 C.F.R. § 3.321(b). 

Accordingly, on this record, the Board finds that an increased initial rating of 30 percent, but no more, for the service-connected sinusitis is warranted.



ORDER

An increased initial rating of 30 percent, but no more, for the service-connected sinusitis is granted, subject to the regulations controlling disbursement of VA monetary benefits.



REMAND

The VA medical records pertaining to the service-connected Hashimoto's hypothyroidism from June 17, 2011, indicate that the Veteran was scheduled for an appointment at a VA endocrinology clinic on June 28th. The subsequent endocrinology clinic records are not associated with the claims file. 

The records of VA follow-up treatment and any subsequent relevant treatment records must be sought and associated with the claims file. Bell v. Derwinski, 2 Vet. App. 611, 613 (1992) (holding that VA treatment records are considered to be constructively contained in the claims folder and must be obtained before a final decision is rendered). 

Additionally, because the June 2011 VA examination was performed before a recommended endocrinology consultation had been accomplished, and due to the fact that, in June 2011, the service-connected Hashimoto's hypothyroidism was noted to be worsening, a new VA examination and opinion that incorporates findings of all relevant tests and studies and accounts for the Veteran's current level of disability is warranted. See 38 U.S.C.A. § 5103A(d).

Accordingly, this remaining matter is REMANDED to the RO for the following action:

1. The RO should take appropriate steps to contact the Veteran in order to have him identify all treatment by VA and non-VA health care providers who have treated the service-connected Hashimoto's hypothyroidism since June 2011. 

After obtaining any appropriate authorizations for release of medical information, the RO must seek to obtain copies of any outstanding records from the identified health care providers. 

The records sought must include all relevant VA records of treatment from June 2011 forward, including of the Veteran's appointment at a VA endocrinology clinic on June 28, 2011.

The Veteran must also be advised that, with respect to private medical evidence or treatment records, he may alternatively submit records on his own to the RO.

2. Once all available medical records have been received, the RO should arrange for a VA examination in order to determine the current manifestations and severity of the service-connected Hashimoto's hypothyroidism. 

The following considerations will govern the examination:

(a) The claims folder, including all relevant medical records, and a copy of this remand, will be reviewed by the examiner. The examiner must acknowledge receipt and review of the claims folder, the medical records obtained, and a copy of this remand.

(b) If deemed appropriate by the examiner, the Veteran must be scheduled for further medical examinations. All indicated tests and studies must be performed, and any indicated consultations must be scheduled.

(c) The examiner must report whether the Veteran experiences any of the following due to his hypothyroidism: fatigability; a requirement of continuous medications; constipation; mental sluggishness; muscular weakness; mental disturbance; weight gain; sleepiness; bradycardia (less than 60 beats per minute); mental disturbance (dementia, slowing of though, depression); cardiovascular involvement; or cold intolerance.

(d) The examiner must provide an opinion as to the impact of service-connected hypothyroidism on the Veteran's social and occupational functioning and ordinary activities of daily living.
 
(e) The examiner is requested to provide a fully reasoned explanation for his or her opinions.

3. After completing all indicated development to the extent possible, the RO should readjudicate the claim in light of all the evidence of record. If the benefit sought on appeal remains denied, the RO should furnish the Veteran with a fully responsive Supplemental Statement of the Case and he should be afforded a reasonable opportunity for response. 

Thereafter, if indicated, the case should be returned to the Board for the purpose of appellate disposition. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).


______________________________________________
STEPHEN L. WILKINS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs