Citation Nr: 1702621 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 14-23 742 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for a bilateral elbow disorder.

2. Entitlement to service connection for a low back disorder.

3. Entitlement to an initial evaluation in excess of 70 percent for posttraumatic stress disorder (PTSD) with depression.

4. Entitlement to a temporary total evaluation based on treatment for a service-connected disability requiring convalescence or hospitalization for over 21 days.

5. Entitlement to an effective date earlier than November 19, 2010, for the grant of service connection for PTSD.


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs
WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

K. Osegueda, Counsel


INTRODUCTION

The Veteran served on active duty from September 2000 to September 2004 and from August 2008 to September 2009.

This case initially came before the Board of Veterans' Appeals (Board) on appeal from January 2011, January 2012, and September 2012 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon.

In March 2016, the Board remanded the case to schedule the Veteran for a videoconference hearing. In June 2016, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of the hearing has been associated with the record. The record was also held open for 60 days following that hearing in order to provide the Veteran and his representative the opportunity to submit treatment records. Thereafter, the Veteran submitted additional medical evidence. 

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. 

In addition to the VBMS claims file, there is a Virtual VA paperless file associated with the Veteran's case. A review of the documents in the Virtual VA file reveals VA treatment records that are relevant to the issues on appeal. The remaining documents are duplicative of evidence in the VBMS file.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for a bilateral elbow disorder and a low back disorder, an increased rating for PTSD with depression, and a temporary total evaluation based on treatment for a service-connected disability requiring convalescence or hospitalization for over 21 days, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. During the June 2016 hearing, prior to the promulgation of a decision in the appeal, the Veteran indicated that he wanted to withdraw his appeal for the issue of entitlement to an effective date earlier than November 19, 2010, for the grant of service connection for PTSD.

2. The RO previously considered and denied the Veteran's claim for service connection for a bilateral elbow disorder in an April 2010 rating decision. The Veteran was informed of the decision and of his appellate rights, but he did not appeal. There was also no relevant evidence received within one year of the determination.

3. The evidence received since the April 2010 rating decision, by itself, or in conjunction with previously considered evidence, relates to an unestablished fact necessary to substantiate the claim for service connection for a bilateral elbow disorder.

4. The Veteran was not medically discharged from service due to an unstable disability deemed to be severe and substantially gainful employment is not feasible or advisable. 

5. The Veteran's PTSD with depression did not require hospital treatment in a VA or VA-approved hospital for a period in excess of 21 days. 

6. The Veteran's PTSD with depression did not require surgery necessitating at least one month of convalescence, surgery with severe postoperative residuals, or treatment with immobilization by case of one major joint or more. 



CONCLUSIONS OF LAW

1. The criteria for withdrawal of an appeal by the Veteran have been met with respect to the issue of entitlement to an effective date earlier than November 19, 2010, for the grant of service connection for PTSD. 38 U.S.C.A. § 7105 (b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2016).

2. The April 2010 rating decision that denied service connection for a bilateral elbow disorder is final. 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. §§ 3.104, 3.156, 20.200, 20.202, 20.302, 20.1103 (2016).

3. The evidence received subsequent to the April 2010 rating decision is new and material, and the claim for service connection for a bilateral elbow disorder is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2016).

4. The criteria for a temporary total evaluation for PTSD with depression have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.28, 4.29, 4.30 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Withdrawal

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2014). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2016). Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. Withdrawal of an appeal will be deemed a withdrawal of the Notice of Disagreement and, if filed, the Substantive Appeal, as to all issues to which the withdrawal applies. 38 C.F.R. § 20.204(c). 

During the June 2016 hearing, the Veteran withdrew his appeal as to the issue of entitlement to an effective date earlier than November 19, 2010, for the grant of service connection for PTSD. See Board hearing transcript, p. 2. Thus, there remains no allegation of errors of fact or law for appellate consideration with respect to that claim. Accordingly, the Board does not have jurisdiction to review the appeal of that issue, and it is dismissed.


New and Material Evidence

The Veteran's claim for service connection for a bilateral elbow disorder was previously considered and denied by the RO in a rating decision dated in April 2010. The evidence of record at the time of the April 2010 rating decision included service treatment records, private treatment records, and a February 2010 VA examination report. In that decision, the RO found that the Veteran's service treatment records were negative for any complaints, treatment, or diagnosis of a bilateral elbow disorder. The RO also noted that the February 2010 VA examiner diagnosed the Veteran with a bilateral elbow strain with episodes of flares with heavy lifting. In addition, the RO observed that the VA examiner found that there was no elbow pain on examination. The RO determined that the Veteran's elbow pain was considered acute and transitory in nature and that the evidence did not show that the Veteran had a disability for which service connection could be established.

The Veteran was notified of the April 2010 rating decision and of his appellate rights; however, he did not submit a notice of disagreement. In general, rating decisions that are not timely appealed are final. See 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1103. There was also no evidence received within one year of the issuance of the decision. Therefore, the April 2010 rating decision is final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.156(b), 20.200, 20.201, 20.302, 20.1103 (2016).

In April 2012, the Veteran requested that his claim for service connection for a bilateral elbow disorder be reopened. 

The evidence associated with the claims file subsequent to the April 2010 rating decision includes VA treatment records, private treatment records, Social Security Administration (SSA) records, and hearing testimony. Notably, there is new evidence showing that the Veteran complained of elbow pain that was diagnosed as possible tennis elbow. See, e.g., January 2012 and March 2012 VA treatment notes. In addition, during the June 2016 hearing, the Veteran reported that he developed shooting elbow pain that radiated down his arms to his hands during his last tour, which remained constant since that time. He stated that, at the end of his tour, he was unable to carry a weapon for a while due to elbow pain and numbness in his hands and arms. He indicated that he was treated by a private physician after he returned from deployment. As such, the evidence relates to an unestablished fact necessary to substantiate the claim. Moreover, for purposes of reopening a claim, the credibility of newly submitted evidence is generally presumed. See Justus v. Principi, 3 Vet. App. 510, 513 (1992). Accordingly, the Board finds that new and material evidence has been presented to reopen the Veteran's previously denied claim for service connection for a bilateral elbow disorder. However, as will be explained below, the Board is of the opinion that further development is necessary before the merits of the Veteran's claim can be addressed.



Temporary Total Evaluation

A. Duty to Notify and Assist

Upon receipt of a substantially complete application for benefits, VA must notify the claimant of what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and, (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103(a); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

With respect to the claim for a temporary total evaluation, the RO provided the Veteran with a notice letter in November 2011, prior to the initial decision on that claim in January 2012. Therefore, the timing requirement of the notice as set forth in Pelegrini has been met and to decide the appeal would not be prejudicial to the claimant. Moreover, the content of the letter satisfied the notice requirements. 

In addition, the duty to assist the Veteran has also been satisfied in this case. The Veteran's service treatment records and all identified, relevant, and available post-service medical records, including VA treatment notes, Social Security Administration (SSA) records, and private treatment notes, have been associated with the claims file and were reviewed by both the RO and the Board in connection with the claims. 

The Board does acknowledge that the issue of entitlement to an increased evaluation for PTSD is being remanded in order for the AOJ to have initial consideration of the additional VA treatment records and to obtain outstanding private medical records. However, the Board finds that such development would not alter the outcome of this particular issue being decided herein. As discussed below, the Veteran and his representative have asserted the he is entitled to a temporary total evaluation for PTSD in 2011 and 2013. The VA treatment records obtained since the June 2014 statement of the case are not relevant to this claim. Similarly, recent private medical records would not likely pertain to 2011 or 2013. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements in the law is not appropriate when it imposes additional burdens with no benefit flowing to the Veteran).

Moreover, with respect to any outstanding private medical records, the Board notes that the record was specifically held open after the June 2016 hearing to provide the Veteran and his representative additional time to submit treatment records, and they did provide additional medical evidence. They have not provided authorization to obtain any additional private medical evidence, despite having the opportunity to do so throughout the appeal period. The duty to assist is not a one-way street. A claimant cannot remain passive when he has relevant information. See Wamhoff v. Brown, 8 Vet. App. 517 (1996); Wood v. Derwinski, 1 Vet. App. 190 (1991). The Veteran must authorize the release of existing records in a form acceptable to the person, company, agency, or other custodian holding the records, or submit those records himself. 38 C.F.R. § 3.159 (c)(1)(i)-(ii).

With regard to the March 2016 remand, the Board finds that the Appeals Management Center (AMC) substantially complied with the Board's remand directives. Stegall v. West, 11 Vet. App. 268, 271 (1998). See also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that only substantial compliance would be required, not strict compliance). Specifically, pursuant to the remand, the AMC scheduled the Veteran for a videoconference hearing that was held in June 2016. Thus, there was compliance with the March 2016 remand.

Moreover, as previously noted, the Veteran was afforded an opportunity to present testimony at a hearing before the Board in June 2016. In Bryant v. Shinseki, 23 Vet. App. 488, 496-97 (2010), the Court held that the Veterans Law Judge who chairs a hearing fulfill two duties to comply with 38 C.F.R. § 3.103(c)(2). These duties consist of (1) fully explaining the issues pertinent to the claim(s) on appeal; and (2) suggesting the submission of evidence that may have been overlooked. See also 38 C.F.R. § 3.103(c)(2). In this case, the undersigned Veterans Law Judge set forth the issues to be discussed and sought to identify pertinent evidence not currently associated with the claims folder, to include any relevant post-service treatment records. Specifically, the Veteran was asked about any private treatment for his PTSD. The hearing focused on the elements necessary to substantiate the claims. The Veteran, through his testimony and questioning by his representative, demonstrated his actual knowledge of the elements necessary to substantiate his claims. As such, the Board finds that VA complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010). There has been no allegation otherwise.

For these reasons, the Board concludes that VA has fulfilled the duty to assist the Veteran with respect to the issue of entitlement to a temporary total evaluation. Hence, there is no error or issue that precludes the Board from addressing the merits of the appeal.


B. Law and Analysis

During the June 2016 hearing, the Veteran's representative argued that the Veteran was entitled to two periods of temporary total evaluation based on treatment for PTSD in 2011 and 2013. She indicated that the Veteran was hospitalized at a private hospital on both occasions.

A temporary total, i.e., 100 percent, evaluation may be assigned under 38 C.F.R. 4.28 when a veteran is medically discharged from service due to an unstable disability deemed to be severe and substantially gainful employment is not feasible or advisable. 38 C.F.R. 4.28.

Under 38 C.F.R. § 4.29, a temporary total rating is assigned when it is shown that a service-connected disability has required hospital treatment in a VA or VA-approved hospital for a period in excess of 21 days. This is true regardless of whether the hospital admission was for a service-connected disability, as long as hospital treatment for a service-connected disability is instituted and continued for a period of 21 days. 38 C.F.R. § 4.29(b).

Under 38 C.F.R. § 4.30, a temporary total evaluation is established when a disability, subject to VA compensation required surgery necessitating at least one month of convalescence, surgery with severe postoperative residuals, or treatment with immobilization by case of one major joint or more. 38 C.F.R. § 4.30.

In support of his claim, the Veteran submitted correspondence dated in January 2011 and February 2011 from the his private treating psychiatrist in which the psychiatrist recommended that the Veteran be provided twelve weeks of leave from work for his PTSD due to exacerbation of his symptoms from the demands of his job.

The Veteran also submitted correspondence dated in October 2011 from his private treating psychiatrist. In the letter, the psychiatrist stated that the Veteran was sufficiently disabled from his PTSD and he was unable to continue working as a mortgage loan officer. The psychiatrist indicated that the Veteran's disability was ongoing, limited his ability to work, and made him vulnerable to workplace exacerbation of his symptoms and functioning. The psychiatrist noted that the Veteran felt tremendous financial pressure to return to work in January 2011 because he was not receiving disability insurance payments and he feared that he would lose his health insurance. The psychiatrist noted that he had serious reservations about the negative impact of work on the Veteran, but he supported the Veteran's decision to return to work. He stated that it was quickly apparent that the Veteran was not able to perform his previous duties and his symptoms quickly worsened. The psychiatrist and the Veteran decided that the Veteran required another leave of absence from work.

A June 2012 VA medical record noted that the Veteran reported that he had no history of hospitalizations.

The Veteran was later admitted to a private hospital on July 31, 2013, after presenting to the emergency department with depression and active suicidal ideation. It was again noted that he had no prior hospitalizations for his psychiatric disability. A mental health social worker estimated that the Veteran was at least a moderate risk for self-harm in the short-term. He was admitted for inpatient psychiatric treatment; however, at the June 2016 hearing, the Veteran's representative indicated that he was released on the condition that someone remain with him for a 24-hour period.

The record is unclear as to the exact duration of the hospital admission in July 2013, although it appears to have likely been less than 21 days. Moreover, the hospital was not a VA facility, and there is no indication that it was a VA-approved facility. Indeed, a December 2013 VA medical record indicates that the Veteran was discharged from the PTSD clinical team services due to lack of contact for over an 18-month period. 

The letters from the Veteran's private psychiatrist and the private and VA treatment records do not establish that the Veteran was hospitalized in excess of 21 days or that he underwent any surgery or other treatment requiring at least one month of convalescence for his PTSD. Further, the evidence does not show that he was medically discharged from service for due to an unstable disability deemed to be severe and substantially gainful employment is not feasible or advisable. Therefore, the Board finds that the Veteran does not meet the criteria for a temporary total evaluation for his PTSD with depression under 38 C.F.R. §§ 4.28, 4.29, or 4.30. 

In reaching this determination, the Board acknowledges that the Veteran had an absence of work. However, he was assigned a 70 percent evaluation for his PTSD during these times, which specifically contemplates occupational impairment. 38 C.F.R. § 4.118, Diagnostic Code 9411. 


ORDER

The appeal as to the issue of entitlement to an effective date earlier than November 19, 2010, for the grant of service connection for PTSD is dismissed. 

New and material evidence having been submitted, the claim of entitlement to service connection for a bilateral elbow disorder is reopened.

A temporary total evaluation based on treatment for PTSD is denied.


REMAND

Initially, the Board notes that additional VA treatment records and a January 2016 VA examination report have been associated with the file, which the AOJ has not yet considered in connection with the service connection and increased evaluation claims on appeal. Nor has the Veteran submitted a waiver of the AOJ's initial consideration of that evidence. Although the Veteran filed his substantive appeal in June 2014, the automatic waiver provision does not apply because this additional evidence was obtained by the AOJ and was not submitted by the Veteran. See Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, Public Law No. 112-154, 126 Stat. 1165 (amending 38 U.S.C. § 7105 to provide for an automatic waiver of initial AOJ review of evidence submitted to the AOJ or to the Board at the time of or subsequent to the submission of a substantive appeal filed on or after February 2, 2013, unless the claimant or claimant's representative requests in writing that the AOJ initially review such evidence). As a result, the Board finds that the case must be remanded to the AOJ for initial review of the additional evidence of record. See 38 C.F.R. §§ 19.37, 20.1304(c) (2016).

The Board also notes that the Veteran's private psychiatrist, Dr. M.S., indicated in June 2016 that she was only providing the Veteran' intake and recent records, as he had a large file. Thus, as the increased evaluation issue must be remanded, the Veteran will have the opportunity to submit or authorize VA to obtain any additional private medical records pertinent to the claim.

Moreover, the record shows that the Veteran was scheduled for a VA examination in May 2014 in connection with his service connection claims, but the record reflects that he failed to report. During the June 2016 hearing, the Veteran testified that he was unaware that he was scheduled for a May 2014 VA examination. On review, the claims file does not include any letter notifying him of the date and time of the scheduled examination.

The Board is mindful of the provisions of 38 C.F.R. § 3.655 regarding action to be taken when a veteran fails to report for a scheduled VA examination "when entitlement to a benefit cannot be established" without the scheduled examination. 38 C.F.R. §§ 3.655(a), (b) (2016). In this case, however, it is unclear whether the Veteran was properly notified, and there is no published guidance establishing the presumption of regularity in such a situation. See Kyhn v. Shinseki, 716 F.3d 572 (Fed. Cir. 2013).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should request that the Veteran provide the names and addresses of any and all health care providers who have provided treatment for his elbows, low back, and PTSD with depression. A specific request should be made for the complete record from the Veteran's private physician, Dr. M.S. After acquiring this information and obtaining any necessary authorization, the AOJ should obtain and associate these records with the claims file.

It is noted that the Veteran has submitted treatment records from non-VA treatment providers; however, as the case is being remanded, he will have another opportunity to submit or request that VA attempt to obtain any additional records. See, e.g., June 2016 Bd. Hrg. Tr. at 14-16 (Veteran testifying that he was treated by Dr. S.N. following service and recently for his low back and elbow disorders).

 The AOJ should also secure any outstanding, relevant VA treatment records. A specific request should be made for records from the VA Outpatient Clinic in Hillsborough, Oregon.

2. After completing the foregoing development, the Veteran should be afforded a VA examination to determine the nature and etiology of any elbow disorder that may be present. 

Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and lay statements submitted by the Veteran. 

It should be noted that the Veteran is competent to attest to matters of which he has first-hand knowledge, to include observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should identify all elbow disorders. For each diagnosis identified, the examiner should opine as to whether it is at least as likely as not that the disorder manifested in service or are otherwise causally or etiologically related to his military service. In so doing, he or she should address the Veteran's reports of shooting pain and numbness in his arms since service.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of conclusion as it is to find against it.)

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the Veteran's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

3. After completing the foregoing development, the Veteran should be afforded a VA examination to determine the nature and etiology of any low back disorder that may be present. 

Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and lay statements submitted by the Veteran. 

It should be noted that the Veteran is competent to attest to matters of which he has first-hand knowledge, to include observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should identify all low back disorders. For each diagnosis identified, the examiner should opine as to whether it is at least as likely as not that the disorder manifested in service or are otherwise causally or etiologically related to his military service. 

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of conclusion as it is to find against it.)

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the Veteran's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

4. The AOJ should notify the Veteran that it is his responsibility to report for any scheduled examinations, to cooperate in the development of the claims, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2016). 

In the event that the Veteran does not report for any scheduled examination, documentation which shows that notice scheduling the examination was sent to the last known address should be associated with the VBMS file. It should also be indicated whether any notice that was sent was returned as undeliverable.

5. After completing the above actions and any other development as may be indicated as a consequence of the actions taken in the preceding paragraphs, the case should be readjudicated by the AOJ on the basis of additional evidence, including all evidence received since the March 2014 supplemental statement of the case.

If the benefits sought are not granted, the Veteran and his representative should be furnished a supplemental statement of the case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs