Citation Nr: 1331588 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 09-03 849 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for service-connected left foot pes cavus and varus hind foot to include plantar fasciitis.


REPRESENTATION

Appellant represented by: Nebraska Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

D.S. Lee, Counsel


INTRODUCTION

The Veteran served on active duty from October 1983 through June 1998.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2007 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska which, among other issues, granted service connection for a left foot disability, characterized as pes cavus and varus hindfoot, with a noncompensable disability rating, effective from January 23, 2007. A timely Notice of Disagreement (NOD) asserting entitlement to a higher initial disability rating for his left foot disability was received from the Veteran in March 2008.

While the appeal in this matter was pending, the Veteran filed a May 2008 submission in which he purported to seek service connection for plantar fasciitis of the left foot, secondary to his service-connected pes cavus and varus hindfoot. In a subsequent May 2008 letter to the Veteran, VA acknowledged receipt of the Veteran's claim and invited the Veteran to provide evidence showing a connection between his claimed plantar fasciitis was related to his service-connected pes cavus and varus hindfoot. Although the letter indicated that VA was considering service connection for left plantar fasciitis secondary to his pes cavus and varus hindfoot, thus indicating that it was considering the award of service connection for left plantar fasciitis as a new and separate disability from the service-connected left foot pes cavus and varus hindfoot, in a July 2008 rating decision, the RO awarded an increased disability rating of 10 percent, effective from May 14, 2008 and recharacterized the previously service-connected left foot disability as "pes cavus and varus hindfoot to include plantar fasciitis..." Thus, the RO apparently determined that the Veteran's plantar fasciitis did not present symptomatology that was separate and distinct from his service-connected pes cavus and varus hindfoot. Esteban v. Brown, 6 Vet. App. 259 (1994); Fanning v. Brown, 4 Vet. App. 225 (1993).

After issuance of the July 2008 rating decision, VA received a July 2008 submission that was characterized by the Veteran as another NOD. In this submission, the Veteran expressed his intention to continue his appeal as to the issue of the disability rating assigned for his left foot disability. After a Statement of the Case (SOC) was issued in November 2008, the Veteran perfected his appeal in February 2009, via VA Form 9 substantive appeal.

Testimony was received from the Veteran during a November 2011 Board hearing. A transcript of the Veteran's testimony is associated with the record.

This matter was previously remanded by the Board in February 2012 for further claims development, to include efforts to obtain additional evidence identified by the Veteran; arranging the Veteran to undergo a VA examination of his left foot; and readjudicating the Veteran's claim. After efforts to perform these actions were undertaken by the RO, the matter was returned to the Board.

In January 2013, the Board determined that a March 2012 VA examination, which was performed pursuant to the February 2012 remand action, was inadequate. The Board remanded the matter once again so that a new VA examination of the left foot could be arranged. Following this additional development, the Appeals Management Center (AMC) issued a March 2013 rating decision which granted a higher 10 percent initial disability rating for the Veteran's left foot disability, effective November 17, 2006.

Subsequently, the matter was returned to the Board. In May 2013, however, the Board determined that the February 2013 VA examination that was performed in accordance with the prior January 2013 remand was also insufficient. Accordingly, the Board remanded this matter again to afford the Veteran yet another VA examination of his left foot. This matter now returns to the Board for its de novo consideration.

Initially, the Board now notes that in its previous May 2013 remand, the issue on appeal was mistakenly characterized to include consideration of entitlement to a compensable initial disability rating for the Veteran's left foot disability, prior to November 17, 2006. In that regard, the Board notes that the Veteran's appeal for service connection for left foot disability was received by VA on November 17, 2006; hence, the effective date for the higher 10 percent disability rating granted by the AMC matches the date on which the Veteran's original claim was received. The general rule regarding the assignment of effective date for an award based on an original claim for VA benefits is that the effective date "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C.A. § 5110(a) (West 2002). See 38 C.F.R. § 3.400 (2012) (to the same effect). Accordingly, the 10 percent disability rating assigned by the AMC's rating decision may not be effective any earlier than November 17, 2010. As such, the Board has recharacterized the issue as styled on the title page of this decision.

The Board notes that this matter also initially included the issues of the Veteran's entitlement to a separate disability rating for left knee instability and for higher disability ratings for disabilities of the right shoulder and right foot and for a scar on his right scapula. The Veteran did not, however, perfect his appeal for left knee instability rating. As such that issue is not on appeal before the Board. The remaining claims were addressed in the Board's January 2013 decision, which granted a staged 20 percent disability rating for the Veteran's right shoulder disability effective from July 22, 2009 and denied higher disability ratings for his right foot and right scapular scar. As those issues have been addressed in full, they do not remain before the Board on appeal.


FINDING OF FACT

The Veteran's left foot pes cavus and varus heel deformities with plantar fasciitis have been manifested by moderate disability marked by left arch pain with flare-ups during weightbearing and limited ability to walk distances of up to a quarter mile however, has not been manifested by skin or vascular abnormalities, abnormal alignment of the Achilles tendon upon weight and non-weight bearing, valgus, forefoot or midfoot malalignment, hallux valgus, abnormal angulation or dorsiflexion of the metatarso-phalangeal joints, varus or valgus of the os calcis, ankylosis, Morton's neuroma, hammer toes, hallux valgus, hallux rigidus, pes cavus, malunion or nonunion of the tarsal or metatarsal bones, or any loss of left ankle motion.


CONCLUSION OF LAW

The criteria for an initial rating in excess of 10 percent for left foot pes cavus and varus hind foot, to include plantar fasciitis, have not been met or approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.40, 4.45, 4.71a, Diagnostic Codes 5271 and 5284 (2012).


REASONS AND BASES FOR FINDING AND CONCLUSION

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011) and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2012). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical evidence or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide.

VA's notice requirements apply to all five elements of a service-connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006). In rating cases, a claimant must be provided with information pertaining to assignment of disability ratings (to include the rating criteria for all higher ratings for a disability), as well as information regarding the effective date that may be assigned. Id. Such notice should be provided to a claimant before the initial unfavorable decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In this case, the Veteran was not provided the notice descried above prior to the RO's August 2007 rating decision which granted service connection for his left foot disability. Nonetheless, given the favorable disposition of his service connection claim, the Veteran was clearly not prejudiced by VA's failure to provide such notice. Moreover, after receipt of the March 2008 NOD in which the Veteran challenged the initial disability rating assigned for his left foot disability, the RO issued a March 2008 letter which provided the Veteran with notice of the information and evidence needed to substantiate his claim of entitlement to a higher disability rating his left foot disability. Consistent with Dingess, this letter included notice of the process by which VA assigns disability ratings and effective dates. Subsequently, the Veteran was provided opportunity to respond to the March 2008 letter and to participate meaningfully in the development of his claim before the issue of the Veteran's entitlement to a higher initial disability rating was readjudicated by the RO in a July 2008 rating decision. Hence, to the extent that the Veteran may have been prejudiced by the late timing of the March 2008 letter, the effects of such prejudice have been cured. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim is sufficient to cure a timing defect).

In addition, VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the Veteran's claims. His service treatment records, claims submissions, lay statements, and VA treatment records have been obtained and associated with the record. As noted by the Board in the May 2013 remand, the Veteran did identify private treatment for his left foot with his primary care physician, Dr. M.B. Consistent with the remand action directed by the Board, the RO contacted the Veteran to request Dr. M.B.'s records, or alternatively, additional information as to Dr. M.B.'s whereabouts and a signed release for the records. However, the Veteran did not respond.

Also, VA examinations of the Veteran's left foot were conducted in July 2007, April 2008, July 2008, June 2009, March 2012, and February 2013. As also discussed in the Board's previous remands, the more recent examinations performed in March 2012 and February 2013 did not adequately discuss the findings in the Veteran's left foot and are incomplete. Accordingly, the Board directed that the Veteran be arranged to undergo a new VA examination of his left foot. Consistent with the Board's directions, the Veteran was scheduled to undergo such an examination in July 2013. A May 2013 post-remand letter notified the Veteran that VA was undertaking efforts to arrange a new VA examination, and, a separate June 2013 letter mailed to the Veteran's known address provided him with notice as to the location, date, and time of the examination. Despite such notice, the Veteran did not report to the examination, and has neither provided cause for his failure to report nor requested that the examination be rescheduled. See 38 C.F.R. § 3.655 (2012).

The Board admonishes that VA's duty to assist in the development and adjudication of a claim is not a one-way street. Wamhoff v. Brown, 8 Vet. App. 517, 522 (1996). If a veteran wishes help, he cannot passively wait for it in circumstances where he may or should have evidence that is essential in obtaining the putative evidence. Wood v. Derwinski, 1 Vet. App. 190, 193, reconsideration denied, 1 Vet. App. 406 (1991) (per curiam). Under the foregoing circumstances, VA will not expend further efforts to obtain the private treatment records from Dr. M.B. Similarly, the Board will not remand this matter again to arrange a new examination. Rather, the Board will adjudicate the issues on appeal based upon the evidence that is currently of record.

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

II. Higher Initial Disability Rating for Left Foot Disability

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. Ratings are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

In cases where there is a question as to which of two ratings applies, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In every instance where the rating schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

In order to evaluate the level of disability and any changes in severity, it is necessary to consider the complete medical history of the veteran's disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). In instances where the rating being appealed is the initial rating assigned with a grant of service connection, the entire appeal period is for consideration, and separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." See Fenderson v. West, 12 Vet. App. 119 (1999).

VA's defined and consistently applied policy is to administer the law under a broad interpretation; however, in a manner that is consistent with the facts shown in each case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

As noted in the introduction, an August 2007 rating decision granted service connection for a left foot disability characterized as pes cavus and varus hindfoot, effective January 23, 2007. A noncompensable initial disability rating was assigned pursuant to the rating criteria under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5299-5284. Subsequently, a March 2013 rating decision issued by the AMC awarded a 10 percent disability rating effective from November 17, 2006, also pursuant to DC 4299-5284. In this posture, the Veteran's appeal for a higher initial disability rating for his left foot disability returns to the Board.

Hyphenated diagnostic codes, such as that used here, are used when a rating under one code requires use of an additional diagnostic code to identify the basis for the rating. 38 C.F.R. § 4.27. Here, the hyphenated diagnostic code indicates that the Veteran's left foot disability was rated by analogy under the general criteria for rating residuals of foot injuries (DC 5284). As there is no specific diagnostic code applicable for the Veteran's specific left foot disability, rating the disability by analogy is permissible. 38 C.F.R. § 4.20.

DC 5284 sets forth the criteria for rating "other" foot injuries. Under those criteria, a 10 percent disability rating is assigned for moderate foot impairment; a 20 percent disability rating is assigned for moderately severe impairment; and a 30 percent rating is assigned for severe impairment. A note under the diagnostic code provides that a maximum 40 percent rating is assigned for actual loss of the foot. 38 C.F.R. § 4.71a.

The terms "mild," "moderate" and "severe" are not defined in the rating schedule. In instances where the applicable criteria are dependent on such characterizations, rather than applying a mechanical formula, VA must evaluate all the evidence to the end that its decision is "equitable and just." 38 C.F.R. § 4.6.

The Board also notes that, when evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7 (1996).

Although the Veteran has not urged the application of any other specific rating criteria, the Board has also considered the potential application of the other provisions of 38 C.F.R., Parts 3 and 4. Schafrath, 1 Vet. App. 589. In doing so, the Board notes that other potentially applicable rating criteria are available under DC 5271, which provides the criteria for rating disabilities based upon loss of ankle motion. Under those criteria, a 10 percent disability rating is assigned for moderately limited ankle motion. A maximum schedular 20 percent disability rating is assigned for markedly limited ankle motion.

The post-service evidence in this case includes records pertinent to VA treatment received by the Veteran from October 2007 through November 2012. These records, however, do not indicate regular treatment for the Veteran's left foot, nor do they reflect subjective complaints or objective findings pertaining to the left foot.

During a July 2007 VA examination of his feet, the Veteran reported a prior medical history of persistent left ankle strains, twisting, and sprains during active duty service. Regarding his current symptomatology, he reported popping and clicking during movement of his left ankle but denied having significant or ongoing problems in his left ankle or foot. He also stated that current limitations of standing or walking appeared to be attributable to problems in his right foot. He reported that he was wearing custom molded orthotics in his shoes. Occupationally, the Veteran reported that he was employed on a full-time basis as an immigration service officer.

During examination of the left foot and ankle, the Veteran again denied having any left foot symptoms or flare-ups of symptoms. Objective evidence of pes cavus and a mild to moderate heel varus was seen; however, the examination of the left foot was otherwise normal. Range of motion of the left foot was grossly normal except for some diminished motion in the first metatarsal phalangeal joint. Repetitive left foot and toe motion did not reveal any evidence of additional pain, weakness, excess fatigability, incoordination, lack of endurance, or loss of motion. The examiner did not observe evidence of painful motion, swelling, tenderness, instability, weakness, abnormal weight bearing, hammertoes, hallux valgus or rigidus, or skin or vascular abnormalities. There was also no evidence of malunion or nonunion of the tarsal or metatarsal bones or muscle atrophy. Consistent with his report that walking and standing difficulties were attributable to problems in his right foot, the Veteran demonstrated a gait that favored his right foot. X-rays of the left foot were normal.

During a VA examination performed in April 2008, the Veteran reported pain in the arches of both feet that was present during standing and walking. A physical examination of the left foot did reveal objective evidence of tenderness with deep palpation of the arch but was otherwise normal. Again, there was no evidence of painful motion, swelling, instability, weakness, abnormal weight bearing, hammertoes, hallux valgus or rigidus, malunion or nonunion of the tarsal or metatarsal bones, muscle atrophy, or other deformation. The examiner diagnosed bilateral plantar fasciitis, but opined that this condition did not generally affect the Veteran's occupational functioning or activities of daily living.

During re-examination of the left foot performed three months later in July 2008, the Veteran continued to report recent onset of left arch pain. He also reported that he was recently diagnosed with plantar fasciitis in April 2007 by his primary care physician, Dr. M.B., apparently based upon the Veteran's complaints of pain after walking a long distance. The Veteran described the severity of the reported left arch pain as being eight out of 10 in severity and stated that he was able to walk distances of one quarter of a mile before experiencing increased left heel and arch pain. Regarding his occupation, he stated that he worked a desk job and denied that his pain symptoms interfered with his job at all. Regarding his activities of daily living, he stated that he lived on an acreage and had trouble managing outdoor tasks, but related that the reported trouble was not significant. The Veteran also denied any history of hospitalization related to his left foot.

Physical examination of the left foot revealed tenderness upon deep palpation of the arch where the plantar tendon inserts into the heel and pes cavus. The examination was otherwise normal and once again did not reveal any evidence of painful motion, swelling, instability, weakness, abnormal weight bearing, hammertoes, hallux valgus or rigidus, vascular abnormality, malunion or nonunion of the tarsal or metatarsal bones, or other deformity. Overall, the examiner determined that pes cavus and varus heel deformities in the left foot were mild and stable. He opined further that the Veteran's activities of daily living were unaffected except for mild limitations of chores, exercise, sports, and recreation.

During a June 2009 hearing, the Veteran testified before a decision review officer that he was having left foot problems marked by frequent twisting of his ankle. According to the Veteran, he had been advised by a private podiatrist that this problem was caused by an abnormal gait which caused his feet to roll out. He testified that he was able to walk distances of 100 yards before requiring five to 10 minutes of rest. He also testified that he was no longer able to play racquetball, lift weights, or use a treadmill.

Later that month, the Veteran was afforded a fourth VA examination of his feet. An examination of the left foot at that time did reveal a high left arch, painful motion, and callosities. The remaining examination, however, remained normal and still did not reveal any evidence of skin or vascular abnormalities, abnormal alignment of the Achilles tendon upon weight and non-weight bearing, valgus, forefoot or midfoot malalignment, hallux valgus, or abnormal angulation or dorsiflexion of the metatarso-phalangeal joints. There was no evidence of varus or valgus of the os calcis. An examination of the left ankle joint did not reveal any ankylosis and demonstrated left ankle motion included dorsiflexion from zero to 20 degrees and plantar flexion from zero to 45 degrees. Repetitive left ankle motion was not productive of pain, fatigue, weakness, lack of endurance, or incoordination. Overall, the examiner confirmed the prior left foot plantar fasciitis diagnosis but in contrast to the previous examinations, determined that the Veteran's left foot condition had a moderate effect on the Veteran's occupation and daily activities due to pain upon weight bearing.

In March 2010, the Veteran received a VA examination of his right foot. Although the examination did not include a physical examination of the left foot, x-rays of the left foot were apparently taken. These x-rays revealed essentially normal findings.

During a March 2012 VA examination, the Veteran reported that he was wearing foot orthotics on a daily basis. The Veteran also reported flare-ups of pain in his feet which he described as being "moderate." An examination of the left foot did not reveal any evidence of Morton's neuroma, hammer toes, hallux valgus, hallux rigidus, pes cavus, or malunion or nonunion of the tarsal or metatarsal bones. Left foot x-rays taken in March 2010 were reviewed and interpreted as showing a moderate sized plantar calcaneal spur; interestingly, however, imaging studies of the left foot performed during the VA examination were interpreted as being normal. No gait alteration or limping was observed.

During a re-examination of the Veteran's foot performed in February 2013, the examiner noted a history of metatarsalgia and right first metatarsal surgery; however, did not note any medical history in relation to the left foot. Consistent with prior examinations, an examination of the left foot at that time also did not reveal any Morton's neuroma, hammer toes, hallux valgus, hallux rigidus, pes cavus (claw foot), or malunion or nonunion of the tarsal or metatarsal bones. Imaging studies of the left foot performed at that time also did not reveal any abnormalities. Neurological testing in the left foot also did not reveal any abnormalities.

Considering the evidence in light of the applicable legal authority, the Board finds that the Veteran is not entitled to an initial disability rating in excess of 10 percent for his left foot disability. In that regard, the pertinent evidence shows that, prior to the April 2008 examination, his left foot disability was manifested only by popping and clicking in the left ankle and some diminished motion of the joint in the first toe. By the Veteran's own subjective report of his symptoms, his left foot disability was not productive of significant or ongoing problems. Although the Veteran reported difficulty standing and walking, he attributed such functional difficulties to problems in his right foot. Finally, there is no objective evidence of any swelling, tenderness, instability, weakness, abnormal weight bearing, hammertoes, hallux valgus or rigidus, or skin or vascular abnormalities. Radiological studies of the left foot were also within normal limits. In sum, the evidence before the April 2008 examination simply does not support the finding that the Veteran's left foot disability was even moderate in severity; nor does it indicate any loss of left ankle motion.

In view of the foregoing, the evidence through April 2008 simply does not support the finding that the Veteran had at least moderately severe foot injuries. For that reason, a higher rating may not be assigned for that period under DC 5284. Similarly, in the absence of any evidence showing any loss of left ankle motion, a compensable rating under DC 5271 is also not warranted.

The Board also finds that, although evidence beginning with the Veteran's April 2008 VA examination appears to indicate some worsening of the Veteran's left foot disability, the evidence from April 2008 through the present still does not warrant a disability rating in excess of 10 percent for his left foot disability. In that regard, the medical evidence since April 2008 shows that the Veteran's left foot disability included pes cavus and varus heel deformities with plantar fasciitis which were manifested by left arch pain with flare-ups which the Veteran described as being moderate. Despite the Veteran's apparently increased pain symptoms, he remained able to walk distances of up to a quarter mile and he continued to deny significant impairment of his occupational functioning. Subsequent objective testing performed since the April 2008 examination did not reveal skin or vascular abnormalities, abnormal alignment of the Achilles tendon upon weight and non-weight bearing, valgus, forefoot or midfoot malalignment, hallux valgus, abnormal angulation or dorsiflexion of the metatarso-phalangeal joints, varus or valgus of the os calcis, ankylosis, Morton's neuroma, hammer toes, hallux valgus, hallux rigidus, pes cavus, or malunion or nonunion of the tarsal or metatarsal bones. Apparently based upon the Veteran's increased pain, particularly upon weightbearing, the June 2009 VA examiner opined that the Veteran's left foot disability was having a moderate effect upon his occupational functioning and activities of daily living.

The foregoing evidence shows that overall, the symptomatology associated with the Veteran's left foot disability resulted in moderate disability. Accordingly, a disability rating of 10 percent, and no more, is warranted under DC 5284.

Regarding the Veteran's left ankle motion, the June 2009 VA examination revealed dorsiflexion of the left ankle from zero to 20 degrees and plantar flexion from zero to 45 degrees. Repetitive left ankle motion was not productive of any loss of motion or increased pain, fatigue, weakness, lack of endurance, or incoordination. The motion shown by the Veteran amounts to full and complete ankle motion, as it is defined by federal regulations. 38 C.F.R. § 4.71, Plate II. The other evidence of record also does not indicate any findings of decreased left ankle motion. Under the circumstances, the Board also finds that a disability rating in excess of 10 percent is not warranted pursuant to DC 5271.

As discussed above, VA may consider any demonstrated functional loss attributable to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, in conjunction with criteria under the General Rating Formula. See 38 C.F.R. §§ 4.40, 4.45; DeLuca, 8 Vet. App. at 204-7. As noted above, the evidence does show that the Veteran's left foot disability has been manifested largely by pain, particularly on weightbearing. Nonetheless, the Board points out that the Veteran's left foot pain symptoms were indeed the basis of the 10 percent disability rating effective from May 14, 2008. Given the full left ankle motion demonstrated by the Veteran, the overall level of disability demonstrated by the Veteran is not commensurate to even moderate loss of motion or ankylosis, even after taking the Veteran's reported pain into consideration. Moreover, the Veteran has consistently denied that his left foot disability has resulted in any significant impairment of his activities of daily living or occupational functioning. In view of the foregoing, even after taking into consideration the factors identified in DeLuca, a disability rating higher than 10 percent is also not appropriate for any period relevant to this appeal.

The Board has also considered the provisions under 38 C.F.R. § 3.321(b)(1), which govern the assignment of extra-schedular disability ratings. However, in this case, the record does not show that the severity of the Veteran's left foot disability is so exceptional or unusual such as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1).

The threshold factor for extra-schedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and, no extra-schedular referral is required. Id., see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular rating does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extra-schedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms"(which include marked interference with employment and frequent periods of hospitalization).

The evidence in this case does not show that the Veteran's left foot disability presents an exceptional disability picture that renders inadequate the available schedular ratings. A comparison between the level of severity and symptomatology of the Veteran's assigned rating with the established criteria found under the applicable rating criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. As such, it cannot be said that the available schedular rating for the Veteran's left foot disability is inadequate.

Based on the foregoing, the Board finds that the requirements for an extra-schedular evaluation for the Veteran's service-connected left foot disability, under the provisions of 38 C.F.R. § 3.321(b)(1), have not been met. Thun, 22 Vet. App. 111; Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995).

The Board has also considered whether "staged" disability ratings are warranted by the evidence. The symptomatology shown upon examination and treatment, however, has been essentially consistent and fully contemplated by the assigned disability rating. As such, there is no basis for staged disability ratings in connection with the Veteran's left foot disability.

Overall, the Board finds that the symptomatology associated with the Veteran's left foot disability is consistent with the assignment of a 10 percent disability rating. This appeal is denied.




ORDER

An initial disability rating in excess of 10 percent for service-connected pes cavus and varus hind foot to include plantar fasciitis, claimed as left foot condition, is denied.



____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs