Citation Nr: 1443682 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 10-27 396 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.
 
2. Entitlement to service connection for a right hand disorder.

3. Entitlement to service connection for tinnitus.
 
4. Whether new and material evidence has been received in order to reopen a claim of entitlement to service connection for arthritis of the right knee with history of medial menisectomy.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States




ATTORNEY FOR THE BOARD

A.M. Ivory, Counsel


INTRODUCTION

The Veteran had active service from September 1973 to September 1976 with additional service in the Army Reserves.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from February 2009 and July 2010 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois. In December 2013, the Board remanded the case for additional development and now the case returns for appellate review. 

This appeal was processed using the Veterans Benefit Management System (VBMS) and Virtual VA paperless claims processing systems. 

The issues of entitlement to service connection for tinnitus and whether new and material evidence has been received in order to reopen a claim of entitlement to service connection for arthritis of the right knee with history of medial menisectomy addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. At no time during, or prior to, the pendency of the claim does the Veteran have a bilateral hearing loss disability for VA purposes. 

2. A right hand disorder is not shown to be causally or etiologically related to any disease, injury, or incident in service, and arthritis did not manifest within one year of the Veteran's service discharge.

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 1137, 5107 (West 2002); 38 C.F.R. 
§§ 3.102, 3.303, 3.307, 3.309, 3.385 (2013).

2. The criteria for service connection for a right hand disorder have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 1137, 5107 (West 2002); 38 C.F.R. 
§§ 3.102, 3.303, 3.307, 3.309 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits. 

In the instant case, the Board finds that VA has satisfied its duty to notify under the VCAA. Specifically, a February 2008 letter, sent prior to the initial unfavorable decision issued in February 2009, and a June 2010 letter, sent prior to the initial unfavorable decision issued in July 2010, advised the Veteran of the evidence and information necessary to substantiate his claims for service connection for a right hand disorder and bilateral hearing loss, respectively, as well as his and VA's respective responsibilities in obtaining such evidence and information. Additionally, such letters advised him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra. 

Relevant to the duty to assist, the Veteran's pre-service and post-service VA and private treatment records have been obtained and considered. However, his complete service treatment records are not of record. In this regard, while the only service treatment records included in the file are from the Veteran's Reserve service in 1986. There are no records pertaining to his active duty service from September 1973 to September 1976. In such instances where service medical records are lost or missing, VA has a heightened duty to assist in developing the claim, as well as to consider the applicability of the benefit of the doubt rule and to explain its decision. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005) citing Russo v. Brown, 9 Vet. App. 46, 51 (1996). See also Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). Additionally, if VA's efforts to obtain relevant records are unsuccessful, VA must provide the claimant with notice of such. 38 C.F.R. § 3.159(e)(1).

In this regard, in January 2009, the AOJ issued a Memorandum of Formal Finding of Unavailability of Service Treatment Records. Such reflects that all procedures to obtain the Veteran's service treatment records were correctly followed, all efforts to obtained the needed military information has been exhausted, and further attempts would be futile. Specifically, it was noted that, in May 2008, the Veteran's service treatment records were requested from the National Personnel Records Center (NPRC). A June 2008 letter requested such records from the Veteran. Also in June 2008, NPRC indicates that the service treatment records were mailed to the Chicago RO in February 1993; however, the Chicago RO did not have the records. As of the date of the Memorandum, no records were available from NPRC and the Veteran had not responded. Thereafter, in accordance with the Board's December 2013 remand instructions, the AOJ attempted to obtain clinical records directly from Fort Carson, Colorado, from September 1973 to September 1976. However, NPRC responded in May 2014 that there were no records referable to the Veteran from Fort Carson for such time period. Furthermore, the Veteran was advised as to the unavailability of such records in a June 2014 letter. Thus, the Board finds that the AOJ has exhausted all attempts to obtain the Veteran's service treatment records, to include clinical records from Fort Carson. Moreover, the Veteran has not identified any additional, outstanding records that have not been requested or obtained. 

The Veteran was afforded a VA examination for his bilateral hearing loss in June 2010. The Board finds that the June 2010 VA examination is adequate to decide the issue as it predicated on a review of the record, which includes the Veteran's statements; a review of his medical records; and an audiological examination. In this regard, the Board notes that such audiological testing fails to reveal a current diagnosis of bilateral hearing loss per VA regulations. Therefore, there is no need for a nexus opinion regarding such issue. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination and opinion regarding the issue decided herein has been met.

The Board notes that the Veteran has not been provided with a VA medical examination and/or opinion regarding his claim for service connection for a right hand disorder; however, the Board finds that such is not necessary in the instant case. Specifically, as will be discussed below, there is no indication that such disorder is related to service beyond the Veteran's conclusory generalized lay statement. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). In this regard, a mere conclusory generalized lay statement that service event or illness caused the claimant's current condition is insufficient to require the Secretary to provide an examination. See Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). Therefore, the Board finds that a VA examination and/or opinion is not necessary to decide the claim. 

In December 2013 the Board remanded the issues on appeal in order to contact the Veteran to clarify the approximate dates and locations of VA treatment, to request records from Fort Carson for the period of September 1973 to September 1976, and to obtain records from the following VA Medical Centers: Battle Creek, Grand Rapids, Ann Arbor, Houston, and St. Louis. In accordance with such directives, the AOJ sent the Veteran a letter asking for information regarding the location of his treatment in March 2014; however, the Veteran did not respond. The Board notes that the duty to assist in the development and adjudication of a claim is not a one-way street. Wamhoff v. Brown, 8 Vet. App. 517, 522 (1996). If a Veteran wishes help, he cannot passively wait for it in circumstances where he may or should have evidence that is essential in obtaining the putative evidence. Wood v. Derwinski, 1 Vet. App. 190, 193, reconsideration denied, 1 Vet. App. 406 (1991) (per curiam). As noted above, the AOJ could not obtain any records from Fort Carson. VA treatment records were obtained from all five VAMCs in December 2013, and the Veteran's claims were readjudicated in the July 2014 supplemental statement of the case. Therefore, the Board finds that the AOJ has substantially complied with the December 2013 remand directives such that no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claims herein decided.

II. Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. 
§ 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id. See also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as arthritis and organic diseases of the nervous system, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. In an October 4, 1995, opinion, VA's Under Secretary for Health determined that it was appropriate to consider high frequency sensorineural hearing loss an organic disease of the nervous system and therefore a presumptive disability.

 Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R.
§ 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The Court has held that service connection can be granted for a hearing loss where the Veteran can establish a nexus between his current hearing loss and a disability or injury he suffered while he was in military service. Godfrey v. Derwinski, 2 Vet. App. 352, 356 (1992). The Court has also held that VA regulations do not preclude service connection for a hearing loss which first met VA's definition of disability after service. Hensley, supra, at 159.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

As previously noted, the Veteran's complete service treatment records are unavailable. In cases such as these, VA has a heightened duty to explain its findings and conclusions and to consider carefully the benefit of the doubt rule. 38 U.S.C.A. § 5107(b); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). However, there is no presumption, either in favor of the claimant or against VA, arising from missing records. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005) (the Court declined to apply an "adverse presumption" where records have been lost or destroyed while in Government control which would have required VA to disprove a claimant's allegation of injury or disease in service in these particular cases). Moreover, the case law does not lower the legal standard for proving a claim for service connection but rather increases the Board's obligation to evaluate and discuss in its decision all the evidence that may be favorable to the Veteran. Russo v. Brown, 9 Vet. App. 46 (1996).

Bilateral Hearing Loss

The Veteran claims that service connection for hearing loss is warranted as he was exposed to excessive noise during military service as a mechanic and armor vehicle crewmember. Such military occupational specialties are confirmed by his DD 214. As noted above, the Veteran's service treatment records from his active duty service are not of record. However, his service treatment records from the Reserves are negative for bilateral hearing loss. In addition, at the June 2010 VA examination his audiogram results for the right ear were: 10 decibels at 500 Hertz, 10 decibels at 1000 Hertz, 20 decibels at 2000 Hertz, 20 decibels at 3000 Hertz, and 30 decibels at 4000 Hertz. His audiogram results for the left ear were 20 decibels at 500 Hertz, 20 decibels at 1000 Hertz, 20 decibels at 2000 Hertz, 25 decibels at 3000 Hertz, and 35 decibels at 4000 Hertz. His speech recognition scores were 100 percent for the right ear and 96 percent for the left ear. 

The Board finds that the Veteran does not have bilateral hearing loss under 38 C.F.R. § 3.385. In this regard, in McClain v. Nicholson, 21 Vet. App. 319, 321 (2007), the Court held that the requirement of the existence of a current disability is satisfied when a Veteran has a disability at the time he files his claim for service connection or during the pendency of that claim, even if the disability resolves prior to adjudication of the claim. However, in Romanowsky v. Shinseki, 26 Vet. App. 289 (2013), the Court held that when the record contains a recent diagnosis of disability prior to a Veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency. 

In the instant case, the probative evidence of record fails to demonstrate a current diagnosis of bilateral hearing loss at any point during the pendency of the claim. While the Board has also considered the Court's holding in Romanowsky, supra, there is also no probative evidence of a recent diagnosis of disability prior to the Veteran's claim. In this regard, while the Veteran's post-service VA treatment records indicate that he has bilateral hearing loss, there is no evidence that such disability meets the standards of hearing loss under 38 C.F.R. § 3.385. In this regard, the only audiometric testing of record is the June 2010 VA examination, which fails to meet the criteria for a diagnosis of bilateral hearing loss per VA regulations. 

The Board has considered the Veteran's allegations that he suffers from bilateral hearing loss due to noise exposure in service. However, the Board must adhere to the guidelines of 38 C.F.R. § 3.385, which do not provide for a finding of a current disability for pure tone thresholds or speech recognition scores that fail to meet the required minimum pure tone thresholds and speech recognition scores listed in the regulation. The Veteran's bilateral pure tone thresholds and speech recognition scores did not meet the required minimum criteria to qualify as a current disability under 38 C.F.R. § 3.385. 

Moreover, the Veteran, as a lay person, is not competent to offer a diagnosis of bilateral hearing loss as he does not possess the requisite specialized knowledge. In this regard, such a diagnosis requires the administration and interpretation of audiological test results. Therefore, as such is a complex medical question, the Veteran is not competent to offer a diagnosis of bilateral hearing loss. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). Therefore, as the objective medical evidence is against the finding that the Veteran's bilateral hearing loss rises to the level that allows for compensation under the governing law and regulation, the Board finds that he does not have a current diagnosis of bilateral hearing loss for VA purposes during the pendency of the claim. As such, service connection for bilateral hearing loss is not warranted. 

For the foregoing reasons, service connection is not warranted for bilateral hearing loss. In reaching such decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for bilateral hearing loss. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.

Right Hand Disorder

The Veteran asserts that he has a right hand disorder that is due to his military service. In this regard, he alleged in his June 2010 substantive appeal that he injured his hand while repairing a track on a tank when the tool that he was using slipped and caught the tips of his fingers on his right hand.

As noted above, the Veteran's service treatment records from his period of active duty are not of record. However, his service treatment records from his Reserve service are negative for any complaints, treatments, or diagnosis of the right hand. In fact, his July 1986 examination for enlistment in the Army Reserves reflects that his upper extremities were normal upon clinical evaluation. Furthermore, his accompanying July 1986 report of medical history reflects that he specifically denied that he had, either currently or in the past, swollen or painful joints; skin diseases; broken bones; arthritis, rheumatism, or bursitis; bone, joint or other deformity; loss of finger or toe; or neuritis. 

Post-service records reflect that, in September 2006, it was observed that the Veteran had a history of bilateral carpal tunnel syndrome, status-post right release. Additionally, in October 2006, the Veteran's private physician stated that the Veteran had severe osteoarthritis causing pain, stiffness, and difficulty with walking. It was noted that the Veteran had worsening pains in his right hand. The private physician stated that the Veteran had multiple x-ray studies showing degenerative arthritis. June 2012, August 2012, and December 2012 treatment notes also reflect that, in 2004, the Veteran had carpal tunnel surgery on his right hand and continued to receive treatment for such diagnosis. At such time, he reported morning numbness in the 3rd, 4th, and 5th digits of his right hand with a history of carpal tunnel syndrome. 

However, while the Veteran has a current right hand disorder, to include arthritis and carpal tunnel syndrome, there is no indication that such is related to his military service, to include his alleged in-service injury. In this regard, while his service treatment records are unavailable, his 1986 Reserve records are negative for any complaints, treatment, or diagnoses referable to a right hand disorder. Moreover, the Veteran himself denied that he had, either currently or in the past, swollen or painful joints; skin diseases; broken bones; arthritis, rheumatism, or bursitis; bone, joint or other deformity; loss of finger or toe; or neuritis. Rather, the only evidence indicating that the Veteran's claimed right hand disorder is related to the Veteran's military service is his own conclusory generalized lay statement. As indicated previously, such is insufficient to require the Secretary to provide an examination. See Waters, supra. 

Furthermore, while the Veteran is competent to report an in-service injury to his right hand as well as his current symptomatology, he, as a lay person, is not competent to offer a medical opinion relating his current right hand disorder to such alleged injury. Lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Citing Buchanan and Jandreau, the Federal Circuit reiterated that it had previously and explicitly rejected the view that competent medical evidence is required when the determinative issue in a claim for benefits involves either medical etiology or a medical diagnosis. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

In the instant case, the Veteran is competent to report an in-service injury and describe his current symptoms. However, he is not competent to directly link any current disability to service as medical expertise is required. In this regard, the question of causation of a right hand disorder involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. Specifically, such requires knowledge of the impact trauma has on the musculoskeletal and/or neurological symptoms. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the Veteran's own opinion is nonprobative evidence. See Davidson, supra; Jandreau, supra; see also Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). 

Furthermore, the Board finds that presumptive service connection for arthritis of the right hand is not warranted. In this regard, while the Veteran's private physician's October 2006 statement suggests that he has arthritis in the right hand, such is the first diagnosis of arthritis and comes approximately 40 years after his service separation. Furthermore, his intervening July 1986 Reserve examination fails to show any disorder associated with his right hand. Moreover, the Veteran has not alleged a continuity of right hand symptomatology since service. Therefore, the Board finds that presumptive service connection for arthritis of the right hand, to include on the basis of continuity of symptomatology, is not warranted. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309; Walker, supra.

For the foregoing reasons, service connection is not warranted for a right hand disorder. In reaching such decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for a right hand disorder. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.


ORDER

Service connection for bilateral hearing loss is denied. 

Service connection for a right hand disorder is denied. 


REMAND

Although the Board regrets the additional delay, a remand is necessary to ensure that due process is followed and that there is a complete record upon which to decide the Veteran's remaining claims so that he is afforded every possible consideration. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

In December 2013, the Board remanded for an addendum opinion regarding the etiology of tinnitus. In this regard, the Board directed that the VA examiner provide an addendum opinion on whether it is at least as likely as not that the Veteran's tinnitus resulted from his unprotected noise exposure as a tank crewman and wheeled track mechanic during service. The VA examiner was directed to specifically consider the Veteran's August 2010 and November 2012 statements that his tinnitus started in the military, his post-service occupations required hearing protection, and his truck driving duties were performed in a sound-proofed cab. The examiner was further directed to provide a rationale for the opinion offered.

In March 2014, a VA examination addendum opinion was rendered. The examiner stated that his previous notes from the June 2010 VA examination indicated that the Veteran reported a mild buzzing in his left year once every two weeks and that it began approximately ten years prior to that date. The Veteran also stated that he did not know when his tinnitus started. The VA examiner opined that this indicated that he was not associating his tinnitus with his military service. He further noted that, in August 2010, the Veteran reported that he did not say it began ten years prior to 2010. No complaints of tinnitus during active duty were found and the Veteran denied ear trouble in 1986. He stated that he saw no reason to change his opinion that the Veteran's reported tinnitus is not as likely as not related to his military service.

However, such opinion does not fulfill the December 2013 remand directives as the examiner did not specifically consider the Veteran's statements that his tinnitus started in the military, his post-service occupations required hearing protection, and his truck driving duties were performed in a sound-proofed cab. Moreover, his reliance of the absence of complaints in the Veteran's service treatment records is particularly troubling in light of the fact that such for his active duty service are unavailable. Therefore, another addendum opinion is warranted.

The Board also notes that, in connection with a request to reopen, a claimant must be notified of both the criteria to reopen a claim for service connection-to include a discussion of the basis for the prior denial-as well as the criteria to establish the underlying claim for service connection. Kent v. Nicholson, 20 Vet. App. 1 (2006). In the instant case, the record reflects that the Veteran's claim for arthritis of the right knee with history of medial menisectomy was previously denied in a March 1993 rating decision that was issued in April 1993 on the basis that there was no evidence that he sustained permanent aggravation by injury to his right knee during his military service. The Veteran was provided VCAA notice regarding his right knee claim in February 2008; however, such advised him how to substantiate a claim for an increased rating. Moreover, the AOJ has not considered the Veteran's claim on a new and material basis, to include in the most recent July 2014 supplemental statement of the case, as of yet. Therefore, another remand is necessary to comply with such due process considerations.

Accordingly, the case is REMANDED for the following action:

1. Provide proper VCAA notice consistent with Kent with respect to the issue of whether new and material evidence has been received in order to reopen a claim of entitlement to service connection for arthritis of the right knee with history of medial menisectomy, to include advising the Veteran of the basis of the prior final denial (i.e., there was no evidence that he sustained permanent aggravation by injury to his right knee during his military service). 
 
2. Return the record to the VA examiner who conducted the June 2010 VA audiological examination and offered the March 2014 addendum opinion. The record and a copy of this Remand must be made available to the examiner. The examiner shall note in the examination report that the record and the Remand have been reviewed. If the June 2010/March 2014 VA examiner is not available, the claims file should be provided to an appropriate medical professional so as to render the requested opinion. The need for an additional examination of the Veteran is left to the discretion of the clinician selected to write the addendum opinion.

Upon review of the record, the examiner is requested to provide an opinion as to whether it is at least as likely as not that the Veteran's tinnitus results from his unprotected noise exposure as a tank crewman and wheeled track mechanic during service? 

In offering such opinion, the examiner should specifically consider the Veteran's August 2010 and November 2012 statements that his tinnitus started in the military, his post-service occupations required hearing protection, and his truck driving duties were performed in a sound-proofed cab. A rationale must be provided for the opinion offered. As the Veteran's service treatment records for his active duty period from September 1973 to September 1976 are unavailable, the examiner may not rely on the absence of complaints, findings, treatment, etc. for tinnitus during service in offering a negative opinion.

3. After completing the above, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraph, the Veteran's claims should be readjudicated based on the entirety of the evidence. The AOJ should specifically consider the Veteran's application to reopen his claim of entitlement to service connection for arthritis of the right knee with history of medial menisectomy on the basis of whether new and material evidence has been received. If the claims remain denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.

Thereafter, the case should be returned to the Board for further appellate consideration, if otherwise in order. The Board intimates no opinion as to the outcome of this case. The Veteran need take no action until so informed. The purpose of this REMAND is to ensure compliance with due process considerations.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



______________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs