Citation Nr: 1504664 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 09-37 151 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon


THE ISSUES

1. Whether a separate disability rating is warranted for objective neurologic abnormalities associated with the service-connected degenerative disc disease (DDD) of the lumbar spine.

2. Entitlement to a total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

E. Blowers, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant, had active service from October 1967 to September 1971.

This matter came before the Board of Veterans' Appeals (Board) on appeal from a May 2008 rating decision of the RO in Honolulu, Hawaii, which, in pertinent part, denied an increased disability rating for DDD of the lumbar spine in excess of 
20 percent. This case was first before the Board in August 2011, at which time the back disability rating issue was remanded to obtain a VA spinal examination. When the case was returned to the Board in January 2013, the Board denied an increased disability rating in excess of 20 percent for the service-connected DDD of the lumbar spine. The Board also denied a separate rating for neurological abnormalities attributable to the lumbar spine DDD.

The Veteran appealed the January 2013 Board decision denial of separate ratings for neurologic disorder to the U.S. Court of Appeals for Veterans Claims (Court). In an August 2013 Order, the Court granted a Joint Motion for "Partial" Remand (JMR), which vacated the portions of the January 2013 decision denying a separate rating for neurological abnormalities (as attributable to the service-connected DDD of the lumbar spine), and remanded that remaining question to the Board for readjudication in accordance with the JMR. Specifically, in the JMR the parties agreed that the Board did not provide an adequate statement of reasons and bases as to why the Veteran was not entitled to a separate rating for neurological manifestations of the service-connected DDD of the lumbar spine pursuant to 38 C.F.R. § 4.71a, Schedule of Ratings-Musculoskeletal System, General Rating Formula for Diseases and Injuries of the Spine, Note (1). Further, the parties explicitly agreed that the JMR would not disturb the Board's denial of a disability rating greater than 20 percent for the service-connected DDD of the lumbar spine; therefore, the issue of rating of DDD of the lumbar spine is not at issue. 

In a subsequent April 2014 decision, the Board remanded the separate neurologic disability rating issue on appeal for a VA spinal examination and opinion. The Board finds that there has been substantial compliance with the directives of the April 2014 remand. A letter dated July 2014 reflects that the Agency of Original Jurisdiction (AOJ) scheduled the Veteran for a VA spinal examination on two separate occasions. Each time the VA examination was canceled due to the Veteran's failure to appear. The letter requested that the Veteran contact the AOJ. To date, neither the Veteran nor his representative has provided any reason for the Veteran's failure to appear for either examination. The duty to assist in the development and the adjudication of a claim is not a one-way street. Wamhoff v. Brown, 8 Vet. App. 517, 522 (1996); Zarycki v. Brown, 6 Vet. App. 91, 100 (1993); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). As the AOJ twice scheduled the Veteran for the appropriate VA examination and opinion, and as no explanation has been offered concerning the Veteran's absence, the Board finds an additional remand to comply with the April 2014 directives is not required. Stegall v. West, 11 Vet. App. 268 (1998).

The Board is required to address the clear and specific instructions of a Court order, including those found in a JMR. See Forcier v. Nicholson, 19 Vet. App. 414 (2006) (holding that the duty to ensure compliance with a Court Order extends to the terms of the agreement struck by the parties that forms the basis of the JMR). Pursuant to the August 2013 JMR, the Board's previous error was its failure to provide an adequate statement of reasons and bases as to why the Veteran was not entitled to a separate rating for neurological manifestations of the service-connected DDD of the lumbar spine. As such, while similarities of analysis may appear, the Board notes that this decision is not a mere "repackaging" of the partially vacated and remanded January 2013 Board decision. Extensive thought and consideration has gone into the Board's discussion of the issue, and all pertinent evidence has been reviewed and addressed.

In the April 2014 Remand, the Board noted that the January 2013 Board decision had remanded the issue of entitlement to a TDIU for the issuance of Veterans Claims Assistance Act of 2000 (VCAA) notice, and for the development and adjudication of the issue. At the time of the April 2014 Remand, the Board did not address the TDIU issue because the ordered TDIU development was still ongoing by the RO. As such, the Board only addressed the issue which had been remanded by the Court (separate disability rating). In the instant decision, the Board addresses both the question of entitlement to a separate disability rating for neurologic manifestations related to the service-connected spinal disability, and the issue of entitlement to a TDIU.

Per the remand directives of the January 2013 Board decision, on remand the AOJ was to send the Veteran the appropriate VCAA notice concerning entitlement to a TDIU, complete any other necessary development, and then issue a supplemental statement of the case (SSOC) if a TDIU was not granted. For the reasons discussed below, the Board finds that there has not been substantial compliance with the directives of the January 2013 remand, and an additional remand is required to comply with the remand directives. Stegall, 11 Vet. App. 268.

The instant matter is a Veterans Benefits Management System (VBMS) appeal. The Board has reviewed both the VBMS and the "Virtual VA" files so as to insure a total review of the evidence. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014). The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDING OF FACT

From January 10, 2008, the date of increased rating claim, onward, the Veteran was entitled to a separate compensable rating for left lower extremity sciatica, which manifested as mild incomplete partial paralysis.


CONCLUSION OF LAW

Resolving all reasonable doubt in the Veteran's favor, from January 10, 2008, the date of increased rating claim, onward, the criteria for a separate compensable disability rating of 10 percent, but no higher, for sciatica of the left lower extremity have been met. 
38 U.S.C.A. §§ 1155, 5103, 5103A, 5107, 7104 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.1, 4.3, 4.7, 4.10, 4.20, 4.124a, Diagnostic Code 8720 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and to Assist

The VCAA and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a). The Court issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: 
(1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. 

In March 2008, VA issued VCAA notice that informed the Veteran of the evidence generally needed to support a claim for an increased disability rating, what actions he needed to undertake, and how VA would assist in developing the claim. The notice was issued to the Veteran prior to the May 2008 rating decision from which the instant appeal arises. Additional VCAA notice was provided in October 2008 and August 2011. Further, the increased/separate compensable rating issue was readjudicated in a July 2009 statement of the case (SOC), and subsequently issued SSOCs in August 2012 and November 2014; therefore, there was no defect with respect to timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Regarding the duty to assist in this case, throughout the course of this appeal the Veteran received multiple VA spinal examinations, including in April 2008, July 2009, and September 2011. The examination reports are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The VA examination reports reflect that the VA examiners reviewed the record and/or obtained the appropriate histories if the record was unavailable, conducted in-person examinations, and rendered the requested opinions. See VAOPGCPREC 20-95 (stating that the determination as to whether review of prior medical records is necessary in a particular case depends largely upon the scope of the examination and the nature of the findings and conclusions the examiner is requested to provide); Kowalski v. Nicholson, 19 Vet. App. 171 (2005) (holding that a history given by a veteran that has not been found by the Board to be inaccurate is not a basis for discounting an opinion based on that history); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303 (2008) (the claims file is a tool to assist VA examiners to become familiar with the facts necessary to form an expert opinion, it is not a magical or talismanic set of documents).

Further, as discussed above, the Veteran failed to appear for either of the two scheduled VA spinal examinations which were ordered pursuant to the April 2014 Board Remand. No reason has been provided for either absence. Information obtained from these examinations may have been beneficial to properly assess the Veteran's claim. As was also noted above, the duty to assist is not a one-way street; as the Veteran has not provided any reason for his absence at the two scheduled VA spinal examinations, a remand is not warranted for yet another scheduling attempt. See Wamhoff, 8 Vet. App. at 522; Zarycki, 6 Vet. App. at 100; Wood, 1 Vet. App. at 193. 

All relevant documentation, including VA and private medical records, has been secured and all relevant facts have been developed. There remains no question as to the substantial completeness of the record as to the question of whether entitlement to a separate disability rating is warranted for objective neurologic abnormalities associated with the service-connected DDD of the lumbar spine. 38 U.S.C.A. 
§§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above. 

Separate Compensable Rating for Neurologic Manifestations 
Related to the Lumbar Spine 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 
38 U.S.C.A. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2014). 

Where there is a question as to which of two disability ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 
38 C.F.R. § 4.7. It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 
38 C.F.R. § 4.25 (2014). Pyramiding, the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14 (2014). It is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. Conjectural analogies will be avoided, as will the use of analogous ratings for conditions of doubtful diagnosis, or for those not fully supported by clinical and laboratory findings. Nor will ratings assigned to organic diseases and injuries be assigned by analogy to conditions of functional origin. 38 C.F.R. § 4.20.

Where an increase in an existing disability rating based on established entitlement to compensation is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

In rendering a decision on appeal the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert, 1 Vet. App. at 57. Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. 303.

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

Disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula) for Diagnostic Codes 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes (IVDS Rating Formula). Ratings under the General Rating Formula are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. Note (1) to the rating formula specifies that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code. 38 C.F.R. § 4.71a. 

Diagnostic Codes 8520-8730 address ratings for paralysis of the peripheral nerves affecting the lower extremities, neuritis, and neuralgia. Diagnostic Codes 8520, 8620, and 8720 provide ratings for paralysis, neuritis, and neuralgia of the sciatic nerve. Neuritis and neuralgia are rated as incomplete paralysis. Disability ratings of 10, 20, and 40 percent are warranted, respectively, for mild, moderate, and moderately severe incomplete paralysis of the sciatic nerve. 38 C.F.R. § 4.124a. A disability rating of 60 percent is warranted for severe incomplete paralysis with marked muscle atrophy. An 80 percent rating is warranted for complete paralysis of the sciatic nerve. 38 C.F.R. § 4.124(a).

In rating diseases of the peripheral nerves, the term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type of picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a.

Words such as "severe," "moderate," and "mild" are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be equitable and just. 38 C.F.R. § 4.6 (2014). Although the use of similar terminology by medical professionals should be considered, it is not dispositive of an issue. Instead, all evidence must be evaluated in arriving at a decision regarding a request for an increased disability rating. 38 U.S.C.A. § 7104; 38 C.F.R. §§ 4.2, 4.6 (2014).

After a review of all the evidence, lay and medical, the Board finds that, for the period from January 10, 2008 (the date of claim for increase), the evidence was at least in equipoise on the question of whether there were objective neurologic manifestations of mild incomplete partial paralysis to warrant a separate compensable rating of 10 percent for left lower extremity radiculopathy. 38 C.F.R. §§ 4.3, 4.7, 4.124a, Diagnostic Code 8720. 

The Veteran first received a VA spinal examination in April 2008. The examination report reflects that the Veteran stated he had intermittent pain at a level of 8 out of 10, which sometimes flared to an incapacitating level. The Veteran also reported that upon walking or standing for more than 20 to 30 minutes he would intermittently have numbness and tingling in the left lower extremity. Upon examination the straight leg raise test was negative. Further, bilateral lower extremity strength, sensation, and deep tendon reflexes were intact and equal. No objective neurologic abnormalities were diagnosed by the VA examiner. The Board notes that, as the April 2008 examination was not conducted during a flare-up, it is not surprising that the Veteran's lower extremity sciatic symptoms were not present upon examination.

A second VA spinal examination was conducted in July 2009. Again the VA examination report does not indicate that the examination was conducted during a flare-up. The Veteran reported intermittent back pain that was 7 out of 10 on the pain scale, with aggravation about once a week. He also reported that his left leg would intermittently have numbness and tingling. Upon examination the bilateral lower extremities showed intact strength, sensation, and deep tendon reflects, without neurological deficit. As with the previous examination, no objective neurologic abnormalities were diagnosed by the VA examiner. 

The Veteran received a third VA spinal examination in September 2011. This was the final VA examination due to the Veteran's failure to appear at either of the examinations scheduled pursuant to the Board's April 2014 remand. The Veteran reported having daily pain from the left side of his low back into his left leg. He also reported occasional numbness in his toes.

Upon examination in September 2011, straight leg raise test was positive on the left side. The left foot had reduced deep tendon reflexes and some decreased sensation across the toes. While there was some generalized weakness across the left lower extremity, the VA examiner explicitly opined that the weakness was not caused by a focal radicular deficit. At the conclusion of the examination, the VA examiner diagnosed the Veteran with spinal DDD and left lower extremity sciatica. Apart from the left lower extremity sciatica, no other objective neurologic abnormalities were diagnosed. 

The Board has also reviewed the Veteran's VA and private medical records for the period on appeal. Both VA and private treatment records from May 2007 reflect that no neurological dysfunctions were observed upon examination. A July 2007 VA treatment record also conveyed that, upon examination, the Veteran's sensory, motor, and reflex attributes were "grossly normal;" however, it was noted that the Veteran had pain and/or stiffness in the low back. An April 2008 private treatment record conveys that the Veteran was receiving treatment for upper and lower back pain, sciatic pain, and knee pain.

After a review of all the evidence, lay and medical, the Board finds that the evidence is at least in equipoise on the question of whether the Veteran is entitled to a separate compensable disability rating for sciatica of the left lower extremity. Most VA and private treatment records from the period on appeal, along with the April 2008 and July 2009 VA spinal examinations, reflect that testing did not reveal neurologic deficits, which includes sciatica of the left lower extremity; however, it appears that such testing was not conducted during a flare-up. The evidence of record also reflects that throughout the course of this appeal the Veteran has consistently advanced that his sciatic pain radiated into his left leg, and that during flare-ups he would intermittently have numbness and/or tingling in the left lower extremity. At the September 2011 VA spinal examination, the Veteran's straight leg raise test was positive on the left side, and his left foot displayed reduced deep tendon reflexes and some decreased sensation across the left toes. This resulted in a diagnosis of left lower extremity sciatica. The Veteran was likely experiencing a flare-up of symptoms on the day of the September 2011 VA spinal examination. Presumably, had such a flare-up occurred during one of the previous examinations, the Veteran would have been diagnosed with left lower extremity sciatica at that time.

As to the appropriate disability rating for the diagnosed left lower extremity sciatica, the Board notes that the symptoms advanced by the Veteran are intermittent pain, numbness, and tingling. As these symptoms are wholly sensory, the rating should be for the mild, or at most, moderate degree. 38 C.F.R. § 4.124a. Considering the intermittent nature of the left extremity sciatica symptoms, along with their sensory nature, the Board finds that the neurologic disability more nearly approximates that of mild incomplete partial paralysis.

Resolving all reasonable doubt in the Veteran's favor, for the reasons discussed above, from January 10, 2008, the date of claim, onward, the criteria for a separate compensable disability rating of 10 percent, but no higher, for sciatica of the left lower extremity due to mild incomplete paralysis have been met. 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.124a, Diagnostic Code 8720. The Board has also considered whether an earlier effective date during the one year period prior to the date of claim, January 10, 2008, is warranted. See Hart, 21 Vet. App. 505. A private treatment record dated June 1, 2006, prior to January 10, 2007 (the beginning of the one year period prior to the date of claim), reflects that the Veteran reported pain and numbness in his left leg. As such, the earliest factually ascertainable date that the Veteran became entitled to the separate compensable disability rating for sciatica of the left lower extremity is at least June 1, 2006, which is outside of the relevant one-year window; therefore, the appropriate effective date for the grant of a separate compensable disability rating for sciatica of the left lower extremity is the date of claim, January 10, 2008. See 38 C.F.R. § 3.400 (o) (2014). 

The Board has also considered whether the Veteran is entitled to a separate compensable disability rating for any other objective neurologic, or other, disabilities related to the service-connected spinal disability. Upon a review of all the evidence of record, including that discussed above, the Board finds that the Veteran is not entitled to a separate compensable disability rating for any other disability related to the service-connected DDD of the low back. Neither the VA and private treatment records, nor the VA spinal examination reports, reflect that any objective neurologic or other disability, other than sciatica of the left lower extremity, is related to the Veteran's service-connected spinal disability.


ORDER

On and after January 10, 2008, a separate compensable disability rating for sciatica of the left lower extremity of 10 percent, but no higher, is granted.



REMAND

TDIU

A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall, 11 Vet. App. at 271. Failure of the Board to ensure compliance with remand instructions constitutes error and warrants the vacating of a subsequent Board decision. Id.

Pursuant to the January 2013 Board decision, as to the issue of entitlement to a TDIU, on remand the RO was to 1) send the Veteran proper VCAA notice as to what was needed to substantiate a claim for TDIU; 2) undertake any development necessary to adjudicate the issue; 3) adjudicate the issue of entitlement to a TDIU; and 4) issue a SSOC if entitlement to a TDIU was denied. 

The record reflects that the appropriate TDIU notice was sent to the Veteran in November 2013; however, it does not appear that the TDIU issue has been adjudicated by the AOJ/RO. A rating decision granting or denying entitlement to a TDIU has not been ruled upon, and the issue was not included in the November 2014 SSOC. As the issue of entitlement to a TDIU has not yet been adjudicated by the AOJ/RO, the remand directives of the January 2013 Board decision have not been complied with, and a remand is necessary for adjudication and, if necessary, the issuance of a SSOC concerning the issue of entitlement to a TDIU. 

Accordingly, the issue of entitlement to a TDIU is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

After undertaking any necessary development, adjudicate the issue of TDIU. If the benefit sought is denied, the Veteran and representative should be issued a SSOC. An appropriate period of time should be allowed for response before the case is returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs